RICKERT and another *against* MADEIRA.

| 1r | 325 |
| 36 SC | 280 |

**EJECTMENT.**

The interest of a mortgagee, whether the mortgage be equitable or legal, cannot be taken in execution.

ON the trial of this ejectment, before his Honour Judge SMITH, at a Circuit Court held for *Schuylkill* county, the plaintiffs, *Richard Rickert* and *John Reed*, after having shown title to the premises in controversy in *Jacob Boyer* and *David Shubert*, and a deed, bearing date the 3d of *April*, 1815, from *Boyer* and *Shubert* and their respective wives, conveying the premises in fee simple to *John Hughes*, for the consideration of seven hundred and seventy-five pounds, gave in evidence the following agreement:—

"Agreement made this 27th day of *May*, in the year of our Lord, 1815, between *Jeremiah Reed* of *Manheim* township, *Schuylkill* county, of the one part, and *John Hughes*, of the township of *Schuylkill*, county aforesaid, of the other part, witnesseth that the said *Jeremiah Reed* doth agree, and by these presents has agreed with the said *John Hughes*, to go his bail in a certain bond, payable to *Jacob Boyer*, of *Montgomery* county, and *David Shubert*, of the county of *Lehigh*, in the sum of eight hundred pounds, payable on the 10th day of *April*, A. D. 1817; together with three years interest on the same; upon which bond the said *John Hughes* is to receive a title for a certain tract of land, situate on the old *Sunbury* road—it being formerly *Melcher Shubert's* plantation, now in the possession of *John Deatrich*, on the following conditions, that is to say: That the said *John Hughes* is to deliver the said title into the possession of the said *Jeremiah Reed*, as a pledge for his services for going the said bail, and nothing else; the said title to remain in the hands of the said *Jeremiah Reed*, until the said bond is paid, or other security, for the payment of the same, such as shall be deemed sufficient by any three disinterested and reasonable freeholders, and no longer: and it is further agreed, that if the said *Jeremiah Reed* is compelled to pay the said bond when due, the said *John Hughes* is to pay the damage the said *Reed* sustains by the payment thereof: and it is further agreed, that if the said *Reed* detains the said title longer than the said *Hughes* offers to comply with the said agreement, then, in that case, the said *Jeremiah Reed* is to pay all the damage the said *Hughes* sustains by the said detainer.    In witness," &c.

To *July* Term, 1817, *Jacob Boyer* and *David Shubert* brought suit against *John Hughes* and *Jeremiah Reed*, upon the bond men-

(Rickert and another *v.* Madeira.)

tioned in the article of agreement, on which they obtained judgment. *Jeremiah Reed* having died, a *Scire Facias* issued against his executors. Judgment was rendered in the *Scire Facias;* on which execution issued, and a levy was made on the land in dispute, which was condemned. To a *Pluries Venditioni Exponas*, the sheriff returned, that it remained unsold for want of buyers. A judgment was likewise obtained by *Richard Rickert* against *Jeremiah Reed* for one hundred and twelve dollars, upon which sundry executions were issued, under which the land now in dispute, was sold by the sheriff to *Richard Rickert* and *John Reed*, the present plaintiffs, for four hundred dollars, who received the sheriff's deed for the same. The plaintiffs also proved, that the debt, interest, and costs, due in the suit brought on the bond for eight hundred pounds, given by *John Hughes* and *Jeremiah Reed* to *Jacob Boyer* and *David Shubert*, mentioned in the agreement, had been satisfied out of the estate of *Jeremiah Reed*.

The defendant, among other things, proved, that there was, on the 8th of *February*, 1829, due to *Elizabeth Hughes*, the wife of the said *John Hughes*, from *Jeremiah Reed*, as executor of the will of the said *Elizabeth's* father, the sum of four hundred and seventeen pounds three shillings and four-pence, with interest from the 1st of *November*, 1818.

His Honour was requested by the defendant's counsel to charge the jury upon several points which they submitted to him, all of which presented the same question, viz. Whether by virtue of the agreement of the 27th of *March*, 1815, *Jeremiah Reed* had such an interest in the land in dispute, as made it liable to be levied on and sold for his debts?

The opinion of the judge was in favour of the plaintiffs, for whom the jury found a verdict, with this condition, " That if the defendant shall pay to the executors of *Jeremiah Reed*, deceased, the sum of fifteen hundred dollars, on or before the 30th day of *October*, 1829, and pay the costs of this suit, the verdict and judgment be taken off, and judgment be entered for the defendant."

A motion, made by the defendant's counsel, for a new trial, and in arrest of judgment, having been overruled, an appeal was entered.

*Biddle*, for the appellant, contended, that the agreement of *March* 27th, 1815, constituted an equitable mortgage, and that the interest of a mortgagee, even under a legal mortgage, cannot be taken in execution. A mortgage, though in form a conveyance of the land, is now uniformly considered nothing more than a security for a debt; a mere chose in action, which goes to the executor. *Wentz* v. *De Haven*, 1 *Serg. & Rawle*, 319. *M'Call* v. *Lenox*, 9 *Serg. & Rawle*, 304. *Jackson* v. *Willard*, 4 *Johns. Rep.* 41. *Runyan* v. *Mersereau*, 11 *Johns.* 534. 16 *Mass. Rep.* 345. 1 *Pow. on Mort.* 114. *Wharf* v. *Howell*, 5 *Binn.* 502. *Stoever* v. *Stoever*, 9 *Serg. & Rawle*, 434.

The jury had no right to prescribe the time of redemption.

(Rickert and another *v.* Madeira.)

*Leoser, contra,* argued, that the obvious intention of the agreement was to pledge the land itself as a security, and not merely the title deeds, and that every interest in land, whether legal or equitable, was subject to execution. He cited 2 *Cruise's Dig.* 92. 3 *Pow. on Mort.* 1050, 1051, 1055. *Shaupe* v. *Shaupe,* 12 *Serg. & Rawle,* 9. *Lessee of Humphreys* v. *Humphreys,* 1 *Yeates,* 427. *Carkhuff* v. *Anderson,* 3 *Binn.* 4. *Chahoon* v. *Hollenback,* 16 *Serg. & Rawle,* 425. *Richter* v. *Selin,* 8 *Serg. & Rawle,* 425. 20 *Johns.* 51.

The opinion of the court was delivered by

Rogers, J.—This is an appeal from the decision of Justice Smith, in the Circuit Court held for the county of *Schuylkill.* The single question is, whether the article of agreement between *Jeremiah Reed* and *John Hughes,* vested such an interest in the land claimed by the plaintiffs, as to make it liable to be levied on and sold by the sheriff for a debt due by *Reed* or his executors. The first point to which we must direct our attention, is the nature of the agreement; for it is contended, that by the contract, *Reed* obtained an equitable interest, or estate, in the land itself. *Reed* agreed to go bail for *Hughes* in a bond to *Jacob Boyer,* in the sum of eight hundred pounds. As an indemnity to *Reed,* the contract was made, in which *Hughes* agrees to deliver the *title* to the tract in dispute, into the possession of *Reed,* as a *pledge* for his services in going bail, and *nothing else.* The title was to remain in the hands of *Reed* until the bond was paid, or other security given. The agreement further provides, that if *Reed* was compelled to pay the bond when due, *Hughes* was to pay any damage he might sustain; and that if he detained the title longer than *Hughes offered* to comply with the agreement, then *Reed* was to pay all the damage that *Hughes* might sustain. One of the alternatives provided for has happened, for *Reed* has been compelled to pay the eight hundred pounds for which he became security, and without question, has a complete right of action against his principal. This is not denied; but it is contended, that they have mistaken their remedy. It will be remarked, the title only is deposited in the hands of *Reed,* and we are not left to conjecture for what purpose, for the parties themselves expressly say, as a *pledge* and *nothing more,* for his services in going bail. The possession of the land remains with *Hughes,* with a right of lien in *Reed. Reed* does not, as in the case of a legal mortgage, obtain the legal title; but the title papers are merely deposited with him as an indemnity for any eventual loss he might sustain, by reason of his responsibility as bail. It is then an equitable mortgage, by deposite of title deeds, which may be created by parol, or by written agreement, as here, which is the better and safer way, showing the nature and intent of the transaction. This, I believe, is no uncommon assurance in *England,* growing out of the equitable jurisdiction of the court, and relief is had in chancery. In

(Rickert and another *v.* Madeira.)

one respect it differs from a legal mortgage, where the remedy is by foreclosure and transfer of the title to the land mortgaged. In an equitable mortgage, the chancellor decrees a sale of the land in payment of the debt; for it is but the security for the debt, and does not vest any interest, or estate, in the land itself. He cannot by any process obtain possession, for an ejectment will not lie as on a legal mortgage. In one sense, an equitable mortgagee may be said to have an interest in the land; that is, he has a lien on the land as a fund, for the payment of his debt. But a judgment creditor has precisely the same interest. The question then recurs, is this such an interest as is the subject of execution? There would not, perhaps, be much difficulty in distinguishing an equitable from a legal mortgage, as the legal mortgage is the absolute conveyance of the land, to be defeated on payment of the money loaned at a day fixed by the parties, and vesting the legal estate in the mortgagee, *eo instanti* the deed is executed. Not so in an equitable mortgage, for there the legal estate remains in the mortgagor; the land, whether at law or in equity, being but a pledge for the debt. As, however, doubts have been entertained, whether a mortgage be liable to execution, we would wish to be understood as deciding, that the legal and equitable mortgage, so far as regards this question, fall within the same principle. A mortgage must be considered either as a chose in action, or as giving title to the land, and vesting a real interest in the mortgagee. In the latter case, it would be liable to execution; in the former, it would not, as it would fall within the same reason as a judgment bond, or simple contract. If we should consider the interest of the mortgagee as a real interest, we must carry the principle out, and subject it to dower, and to the lien of a judgment; the inconvenience of which, would have been intolerable, particularly at a time, when by law, the mortgagee had six months to record his mortgage. The same objections which may be urged against one judgment, being a lien on another judgment, will apply with equal force to the doctrine, that a judgment is a lien on a mortgage. That a mortgage is but a chose in action, a mere evidence of debt, is apparent from the whole current of decisions. A devise of a man's personal estate, carries with it all his mortgages. A mortgage may be released by an instrument not under seal, and an assignment of the bond, which usually accompanies the mortgage, transfers the right to the mortgage itself; for whatever will give the money secured by the mortgage, will carry the mortgaged premises along with it. The forgiving the debt, although by parol, will draw the land after it as a consequence. The whole result of the cases is, that a mortgage, although in form a conveyance of land, is in substance but a security for the payment of money; and the debt being paid, or in any manner extinguished, the mortgagee becomes a trustee for the mortgagor. In consequence of the want of a Court of Chancery, our law differs from the law of *England;* for in *England* a judgment only binds a legal interest; in *Pennsylvania,* a

(Rickert and another *v.* Madeira.)

legal and an equitable interest. In *England,* the relief is in chancery; but here, we enforce payment by the common law process of execution; and, hence, under the construction of the act of 1705, for taking lands in execution for payment of debts, an equitable as well as a legal title to land, has been considered as subject to the lien of a judgment. The extent of the decisions in *Pennsylvania,* and this will be found, upon a critical examination of all the cases, is to subject to execution all possible contingent titles in land, accompanied with an estate, property, or real interest in the land, whether that interest be legal or equitable. And for the soundness of this position, I refer generally, to the *Lessee of Humphreys et al.* v. *Humphreys,* 1 *Yeates,* 429, *Shaupe* v. *Shaupe,* 12 *Serg. & Rawle,* 12, and to *Streaper* v. *Fisher et al.,* 1 *Rawle,* 162. The doubt, whether mortgages are the subject of execution, does not seem to be peculiar to *Pennsylvania,* for in *Blanchard* v. *Colburn and wife,* 16 *Mass. Rep.* 346, the Supreme Court of *Massachusetts* have ruled, "That lands mortgaged, cannot be levied upon for the debt of the mortgagee, unless he shall have first *entered* on the land." And in *Jackson ex dem. Norton and Burt* v. *Willard,* 4 *Johns.* 41, the Supreme Court of *New York* have gone still further, and have decided, "That lands mortgaged cannot be sold on execution against the mortgagee, before a *foreclosure* of the equity of redemption, though the debt be due, and the estate of the mortgagee has become absolute at law." Without undertaking to mark the extent of the doctrine in *Pennsylvania,* I agree with Chief Justice PARSONS, "That the difficulties of levying upon lands mortgaged, are *insuperable.*" The debt may require only a small part of the land to satisfy it, and several executions may be levied by several persons. This would throw difficulties in the way of the mortgagee, who would be unable to determine the amount of these several interests, which would not be compensated by any advantages which would attend the engrafting this new principle into the law of *Pennsylvania,* particularly when we consider the nice and intricate questions which would necessarily grow out of it. These difficulties have produced the almost universal opinion among the profession, that lands so situated, are not subject to the debts of the mortgagee by execution; and, it is an argument of no inconsiderable weight, that although mortgages are securities of such common occurrence, this is the first attempt which has been made to subject the interest of a mortgagee under a levy and execution.

The court are of the opinion, in which Judge SMITH concurs, that the judgment be reversed, and a *venire facias de novo* awarded.

Judgment reversed, and a *venire facias de novo* awarded.