## ASAY v. HOOVER.

The true construction of the 6th section of the act of April 8, 1833, "relating to last wills and testaments," is, that the testator must sign the testamentary instrument by his own proper signature, if he be able to do so; but, if prevented from doing this by sickness, infirmity, or other incapacity, recourse is to be had to the alternative mode of authentication pointed out by the statute, to wit, signing the testator's name to the instrument, at the end thereof, by some person, in his presence, and by his express direction; and both the incompetency and signature by express request must be proved by two witnesses. A "mark" made by the party proposing a testamentary disposition is insufficient in any case; and so is the name of such party, written by another party, unless so written in accordance with the directions of the statute.

The only legal evidence of testamentary disposition is to be collected from the will itself.

A verdict and judgment upon a feigned issue, *devisavit vel non*, from the registers' court, being conclusive as to personal, but not as to real estate, such a verdict, &c., is not conclusive upon the validity of a will of a *feme covert*, under a power reserved, where the property disposed of consisted of the surplus proceeds of the real estate settled to her separate use, on which, under a power reserved, she had given a mortgage, which was sued out, and the property sold, after the trial of the issue *devisavit vel non*.

A *feme covert*, who, under a marriage settlement, has a power to sell, mortgage, or devise in fee, real estate settled to her separate use, does not exhaust her power by mortgaging such estate, but may devise the same, subject to the mortgage.

On an issue directed to try the title to a fund (being the surplus of a sheriff's sale of real estate) between the devisee of the former owner and one of her heirs at law—the other heirs are incompetent witnesses against the devisee, although, prior to the commencement of the action under which the sheriff's sale took place, they had conveyed all their interest in the decedent's estate to the only party on the record.

In error from the District Court of Philadelphia.

*Feb.* 27, *March* 1. This was a feigned issue, directed to try the right to a fund paid into court by the sheriff, which remained after

satisfying a mortgage given by Barbara Hoover and her husband, the defendant in error, under which the real estate thereby secured was sold, after her decease. The main question in the cause was the validity of a paper purporting to be the will of Mrs. Hoover, the mortgagor; the defendant in error, plaintiff below, claiming as her devisee, the defendant below as her heir at law.

On the trial before FINDLAY, J., it appeared that, in 1825, Barbara Bradshaw, (formerly Asay,) being then a widow, previously to her marriage with William Hoover, the plaintiff below, took a conveyance of a house and lot in Race street, between Ninth and Tenth streets, in Philadelphia, to Samuel Asay, the elder, in fee, in trust, to pay taxes and repairs, " and in the next place to pay over the net surplus of the said rents, issues and profits into the hands of Barbara Bradshaw, the daughter of the said Samuel, or to such person or persons as she, the said Barbara, by writing under her own hand, shall authorize and appoint to receive the same, for her own separate use and support, as if she were sole and unmarried. So that the same messuage, lot and premises hereby granted, and the rents, issues and profits of the same, and every part thereof, shall not be in the power, or subject to the debts, contracts or engagements, of her present or any future husband; and for which net rents, issues and profits, the receipts of the said Barbara Bradshaw, in her own name, and under her own hand, or the receipts of such person or persons as she may from time to time authorize and appoint to receive the same as aforesaid, notwithstanding her present or future coverture, or whether she be covert or sole, shall be deemed valid in law." Remainder to the trustee, during the natural life of said Barbara, for her separate use ; " and from and after the decease of the said Barbara Bradshaw, then to hold all and singular the premises aforesaid, in manner aforesaid, to and for the only proper use and behoof of such person or persons, and for such estate and estates, and in such way, manner and form, as she, the said Barbara Bradshaw, by her last will and testament, in writing, or by any writing in the nature of and by her intended as and for a last will and testament, to be by her signed and executed in the presence of two or more credible witnesses, notwithstanding her present or any future coverture, or whether she be covert or sole, shall nominate, direct and appoint; and in default of such appointment, then in trust to and for the only proper use and behoof of William Bradshaw, the son of the said Barbara, his heirs and assigns for ever, in absolute fee simple. But if he, the said William Bradshaw, shall die in his minority

and without issue, then in trust to and for the only proper use and behoof of the right heirs of the said Barbara Bradshaw for ever, and to and for no other use, intent or purpose whatever," with power to the said Barbara, by any sealed instrument, executed in the presence of two or more credible witnesses, to revoke the uses declared, and declare new ones; "and after the said uses, trusts and estates shall be so revoked, altered, changed and made void, it shall and may be lawful for the said Barbara Bradshaw, notwithstanding any coverture, or whether she be covert or sole, by any deed or deeds, conveyances or assurances in the law, under her hand and seal, to be attested as aforesaid, to grant, bargain, sell, dispose of, and convey, the messuage, lot and premises aforesaid, with the appurtenances, to any person or persons whomsoever, his, her or their heirs and assigns for ever, either absolutely and in fee simple, or conditionally and in the nature of a mortgage or mortgages, to secure the payment of all such sum and sums of money as the said Barbara Bradshaw may from time to time think proper to take up and borrow for her own separate use and disposal, with interest therefor, any thing hereinbefore contained to the contrary thereof, in anywise notwithstanding."

On the 29th of March, 1839, Barbara Hoover and plaintiff, her husband, by deed, executed in the presence of two witnesses, reciting the aforesaid deed of trust; and that she had borrowed money for her separate use, of Barton, for which plaintiff had given his bond; and the appointment by the court of John Large, trustee, in the room of Samuel Asay, deceased. She, "the said Barbara Hoover, in pursuance of the power and authority for that purpose in her vested, in and by the said above recited indenture, hath, and by these presents doth, alter and change the uses, trusts and estates in and by the said indenture mentioned, expressed and declared, and doth hereby direct and appoint, that the said John Large, his heirs and assigns, shall hold the messuage, lot and premises aforesaid, to the use and benefit of the said Isaac Barton, his heirs and assigns. And this indenture further witnesseth, that the said Barbara Hoover, further in pursuance of the power and authority in her vested, and by the said recited indenture, and in consideration of the aforesaid debt, &c., and for the better securing, &c., and also in consideration of the sum of one dollar unto her in hand paid by the said Barton, at the time of the execution hereof, the receipt whereof is hereby acknowledged, hath granted, bargained, sold, released and confirmed, and by these presents doth grant, bargain, sell, release and con-

firm unto the said Isaac Barton, his heirs and assigns, all that, &c.;" provided, that on payment of the debts thereby secured, "then and from thenceforth, as well this present indenture and the estate or estates hereby granted, and every matter and thing herein contained, as the said obligation above recited, shall cease, determine, and become void; and thereupon the said uses, trusts and estates in and by the said recited indenture mentioned, expressed and declared of and concerning the premises aforesaid, shall be restored as fully and amply, to all intents and purposes, as if these premises had not been made." The validity of this execution of the power was determined in Hoover v. the Samaritan Society, 4 Whart. 445.

Barbara Hoover died about the 28th of April, 1842. On the 20th of June succeeding, Hoover, the plaintiff, presented to the register of Philadelphia, for probate, the following instrument:

" In the name of God, amen! I, Barbara Hoover, the wife of William Hoover, of the city of Philadelphia, being of sound mind and memory, do make this my last will and testament.

" Item. I do will and bequeath unto my husband, William Hoover, for the term of his natural life, all that certain two-story brick messuage, &c., (describing the premises contained in the deed of trust above mentioned, and referring thereto by its date and place of record.)

" Item. After the death of my husband, the said William Hoover, I do will and bequeath unto my six children, Samuel C. Hoover, William Hoover, Elizabeth Hoover, Francis H. Hoover, Emily Hoover and Albert Hoover, share and share alike, the above described premises; that is to say, it is my will that they shall each have, receive and enjoy the profits, rents and issues thereof, and that the same shall, after their decease, go to and be possessed by their children, in like manner, share and share alike, and so on in like manner, as long as there shall remain any of my issue or of their issue extant.

" Item. And for the full performance and execution of this my last will and testament, I do name and appoint William Hoover to be the executor thereof.

her<br>" BARBARA ⋈ HOOVER.<br>mark.

" April 19, 1842.

" Signed in presence of us: D. Schneck, Maria E. Hoover."

It appeared on the evidence that William Bradshaw, named in the deed of settlement as the son of Mrs. Hoover, died, without issue in her lifetime; and that the children named in this tes-

tamentary paper were those of her husband by a former marriage, but that she was in the habit of calling them her children. To this the present defendant, a brother of Mrs. Hoover, and one of her heirs at law, objected that this was not her last will, but that the same was obtained by Wm. Hoover under duress, and further that she was not of sound mind at the execution thereof. On the trial of an issue *devisavit vel non*, on the 17th of April, 1843, a verdict was found for defendant, Asay.

In June and September Terms, 1843, a *sci. fa.* and *al. sci. fa.* issued on the mortgage, judgment was had, the property sold, and the surplus paid into court—Asay and others, heirs at law of Mrs. Hoover, claiming the fund. Against the plaintiff, as devisee, this issue was directed, and Asay made defendant.

After reading the deed of trust, mortgage, and proceedings thereon, plaintiff called Schneck, the subscribing witness of the testamentary paper mentioned above. His testimony was objected to, because "the will was tried and verdict against it, which is of record, and the paper should be properly with the register. And no person, other than the person having it in charge, can speak of a record." Which objection was overruled and noted.

This witness stated, (so far as his evidence related to the point in this court, the competency of the testatrix having been found by the jury:) "This is my signature. I saw the will executed by the testatrix, at the time it bears date. It occurred at Hoover's house, in the presence of Mrs. Howell and Miss Maria Hoover. It was about dusk in the evening; candles were lighted."

Upon cross-examination, the witness proceeded: "I first saw that paper when I read it to her. Mrs. Howell handed it to me to read, to the best of my recollection. It was deemed necessary to know what her wish was respecting her property. This was my only reason for reading it to her. I don't recollect any one requesting me to read it. It was deemed necessary by those interested in the will. Hoover was not present. I was acquainted with Mrs. Hoover; I married her half sister. I *do not know whether Mrs. Hoover could write her own name.* Maria Hoover is my wife's sister, and half sister to Mr. Hoover. I cannot tell how the mark was made. The pen was handed to her. She took hold of it. Mrs. Howell handed her the pen; don't recollect whether Mrs. Howell held it or not. Mrs. Hoover was in a very weak state of mind—body, I mean to say. She was not able to sit up. I read the paper. She was asked if she agreed to the statement of the will. She said that she did, and that it was her wish that

Mr. Hoover should have all her property. These were probably the very words she said. The question might have been put, 'Do you wish Mr. Hoover to have all your property?' She replied that it was, or yes. I inserted William Hoover's name as executor by Mrs. Hoover's authority. I don't recollect whether I asked her or not. The name was written after the will was read to her, and after *she had signed it*. She made very few if any remarks, except what I have stated. When I went in, she recognised me and spoke. She said nothing about the paper until I read it to her. She was reclining in bed when she signed it; don't recollect where it was laid when she signed it; it was either on the coverlet, or Mrs. Howell held it. All she said, after she signed the paper, was, that it was her wish that Mr. Hoover should have all the property. She said, after her name was put to it, that it had always been her wish that Mr. Hoover should have all her property. She was sick six or eight weeks before her death."

Plaintiff then called Maria E. Hoover, the other subscribing witness, who testified as follows: "That is my handwriting, (looking at the said paper.) I was present when the paper was executed by Mrs. Hoover. She signed the paper in her bed-room."

*Cross-examined.*—"We went into the room. Mr. Schneck read the will to her. Schneck said, Do you perfectly understand what you are doing? She said, Yes. Mrs. Howell also asked her, after she took the paper in her hand, and the pen, and commenced making the mark; and while making the mark, after having made the first, (the crooked one,) she was taken with a fit of coughing; she stopped making the mark; we gave her some water in a tea-spoon; she had nearly finished; then Elizabeth Howell guided her hand. One of us asked her if she understood what she was doing. She said, Perfectly; yes, I do: I wish Mr. Hoover to have every thing. That was all she said. I don't recollect whether she said 'perfectly.' After this, Mr. Schneck asked if he should pray. She said, Yes. She said 'Amen' while he was praying, appeared very much engaged in prayer, and afterwards thanked him. It was in the room where she lay that I signed it as a witness. She took the paper in her hand when she made the mark. I saw her make the mark, and cannot tell which mark she made first; I think it was the crooked one. Mrs. Howell merely steadied her wrist while coughing. This was after she had made *one mark*. We gave her a teaspoonful of water twice while making the mark. She also asked it to be read to her. She was lying down. When she sat up, she threw up. There was nothing said when Mrs.

Howell guided her hand. Mrs. Howell nursed her; she is Mr. Hoover's daughter. She had been sick several days before the will was made; she lived a week or ten days after. She had her senses perfectly all the time she was sick, except when under the influence of morphine. She spoke of her family affairs to me every day. She was wide awake when Mr. Schneck came, and said, Good evening, Mr. Schneck. It was after tea."

The alleged will was then read, under objections:

1. That there is no evidence of the legal execution of the same.

2. Because the question has been settled against the will, in the feigned issue of *devisavit vel non*, in the Common Pleas of Philadelphia county, No. 646, June Term, 1842, which is conclusive and binding on the parties.

3. Because Barbara Hoover had exercised all her power, limited in the deed of trust, when she executed the mortgage, and could not make a will; and that by that mortgage (*prout* the same) she parted with all her interest in the land, leaving nothing but the equity of redemption in her—the rights which were settled in the *devisavit vel non:* which were overruled by the court, and exception noted.

The defendant then gave in evidence the record of the feigned issue on this will, directed by the register's court, and tried in the Common Pleas; which has already been mentioned. He then called a number of witnesses, who gave evidence of the incapacity of Mrs. Hoover to make a will, by reason of mental infirmity, through sickness, &c.; and proved the drafting of the will by counsel, under instructions received from plaintiff. He also gave evidence that plaintiff and Mrs. Hoover were not on good terms with each other. He then offered to read the deposition of one of the heirs at law of Mrs. Hoover, and to examine another— having first shown a deed from them, with others, (heirs at law,) to the defendant, dated December 9, 1842, (subsequent to the offer of the will for probate, but prior to the making up of this issue.) By this deed, reciting the deed of trust, the death of William Bradshaw, and the vesting of the estate in the grantors therein, they conveyed their interest to defendant, in consideration of natural love, &c., services rendered, and one dollar. On objection made, the witnesses were rejected. A witness of the defendant also stated that the funds for the prosecution of this suit were supplied by defendant exclusively. The plaintiff then gave rebutting evidence, showing Mrs. Hoover's capacity, and that she and plaintiff lived on good terms, and also her declarations of an intention

to give all her property to the plaintiff. The defendant's points were:

1. That a married woman in Pennsylvania cannot make a will, unless it be in pursuance of a power given to her by deed.

2. That if the jury find from the evidence that Barbara Hoover executed to Isaac Barton the mortgage under which the real estate specified in the deed of trust (giving her the power to make a will), was sold, the same was in law a fulfilment of the power, and that thereafter she could make no will of the land, so long as the mortgage was in force.

3. That by such mortgage she conveyed her whole estate, leaving but the equity of redemption in her, which is a chattel interest, and the former decision against the validity of the will was conclusive as to that, and that the plaintiff cannot recover.

4. That by the deed of trust the trustee is seised of the legal estate, and holds it for the use of the parties named in such instrument, and that the plaintiff has no legal claim to this fund, even if the will be good.

5. That the verdict and judgment in the former trial, No. 646, June Term, 1842, in the Common Pleas of Philadelphia county, against the validity of the will, until reversed or set aside, is binding, final and conclusive between the parties, and those claiming under them, and settles the question of the execution of the will, under the power given in the deed of trust, and also the right of the plaintiff to this fund in court, and that the plaintiff cannot recover.

6. That there is no legal evidence of the legal execution of the will, nor that the paper offered in evidence is the will of the said Barbara Hoover, one of the subscribing witnesses called by plaintiff proving that testatrix said "she wanted Mr. Hoover to have all her estate," the paper only giving him a life-estate, with remainder over.

7. That if the jury find from the evidence of the defendant that she was labouring under great imbecility of body, and a general derangement and imbecility of mind, prior to the time of placing her mark to the paper, it is not enough for the plaintiff to show that she could answer *commonplace questions*, but that she was perfectly restored to her mind, and capable of recollecting the objects of her bounty, the property she intended to bequeath, and the manner of distribution, and soundly to judge of the same at the time the paper was signed or mark made.

8. That the insertion of William Hoover's name, as executor,

in the will, after it was signed, vitiates the will, if it was otherwise good.

9. The finding of the jury in the *devisavit vel non* is *prima facie* evidence against the will, and it will require clear proof to the minds of the jury to destroy the operation of that presumption.

10. If the jury believe that Barbara Hoover intended the whole estate to be given to her husband, then the paper offered is not her will, and the verdict must be for the defendant.

Whereupon his Honour answered the foregoing points, and charged the jury as follows:

" The first is answered in the affirmative.

" Second. After the mortgage was foreclosed by the sheriff's sale 'of the premises, Mrs. Hoover had no power of appointment of the estate of the sheriff's vendee. As against him, the mortgage and the sale under it were 'a fulfilment and complete execution of the power reserved to her in the deed of trust. But the execution of the mortgage did not render her incapable of making an appointment of the equity of redemption, which would remain in the persons to whom she legally appointed the estate, or who were entitled to it in default of her appointment. As to them, the mortgage was but a revocation and appointment of their uses *pro tanto*.

" Third. By the mortgage she conveyed a defeasible estate not subject to the power of appointment reserved to her in the deed of trust, but leaving in herself the equity of redemption which *was* subject to the power. An equity of redemption is not a chattel interest, and the former decision in the issue of *devisavit vel non* against the validity of the will is not conclusive as to that interest.

" Fourth. If the will be good, the plaintiff has a legal claim to the fund in court as the appointee of a will executed.

" Fifth. Answered in the negative.

" Sixth. There is sufficient evidence of the execution of the will. As to the last clause of the point, viz.: 'nor that the paper offered in evidence is the will of Barbara Hoover,' there is sufficient evidence it is the will of Barbara Hoover, provided the testatrix was of sound mind, and its execution was not procured by fraud, undue influence, or other means, which would avoid it, and these are questions for the decision of the jury.

" Seventh. Answered in the affirmative.

" Eighth. Answered in the negative.

" Ninth. The verdict of the jury in the issue of *devisavit vel non* is *prima facie* evidence that Barbara Hoover died intestate. It re-

quires the plaintiff to make probate of the will in this issue, which would have been dispensed with had the verdict in the issue of *devisavit vel non* been in his favour.

"Tenth. If the will of Barbara Hoover is free from every objection, it is not avoided by showing she made prior verbal declarations inconsistent with the terms. In such case, the will itself is the only evidence of the testatrix's testamentary intentions. It having been shown that the will was prepared at the instance of parties benefited by it, the jury should be satisfied she was aware of its dispositions, assented to them, and intended to sanction them."

To which answers and charge the defendant's counsel did then and there except.

The errors assigned were:

1 and 2. In admitting the testimony of Schneck and the testamentary paper.

3. In rejecting the depositions of two of the heirs.

4. In not answering the fourth point.

5. In the insufficiency of his answers to the points.

6. In the answer to the second, third, fourth, and fifth points.

7. In the answer to the sixth point proposed by the defendant's counsel, and in the charge to the jury upon the same; in the answer to the eighth point proposed by the defendant's counsel; and in not answering the ninth point proposed by the defendant's counsel, as requested.

8. In not answering the fifth point proposed by defendant's counsel as requested, and in the answer thereto, there being no evidence given before the jury that she was acquainted with the contents of the paper alleged to be her will, which would authorize the learned judge to leave it to the jury as a question of fact they should be satisfied with, and in this answer there is error.

*Dickerson*, for the plaintiff in error.—There has been a trial and verdict upon an issue *devisavit vel non*, and that, we contend, disposed of the question upon this will. After that trial this paper was in the custody of the register, and Schneck could not testify in relation to a paper which had become a record, and of which the proper public officer had the custody. Purd. Dig. 1001; act of 15th March, 1832, sect. 13 and 41. No one can give evidence in regard to a public paper, (Devling *v.* Williamson, 9 Watts, 311,) but the officer who has the keeping of it, and here the plaintiff ought to have produced the whole record of the issue, and not this paper

alone. It is against the policy of the law to allow a married woman to make a will, and every presumption is against it. The act of 8th April, 1833, (Purd. Dig. 168,) is a remedial statute; the provision is, (sect. 6), that the will shall "be signed by the testator, at the end thereof," &c. Now this testatrix was lifeless, and the witnesses do not say *how* she executed it. 8 Watts & Serg. 21; Stricker *v.* Groves, 5 Whart. 392; 10 Watts, 153. The verdict would be conclusive as to personal property; and if, upon such a finding, the court were to decree a partition, and the heirs did not take, and a sale were to be ordered, the purchaser would hold the land. [BELL, J.—Would not the whole proceeding be *notice* to him?] He would have a right to consider the verdict as conclusive. 2 Burr, 1009; 3 East, 357. There was nothing in the shape of interest in Mrs. Hoover, after executing the mortgage, which she could devise; the mortgage exhausted her power.

There was error in rejecting the testimony of Mrs. Hoffman and Mrs. Telley. The cases in this court which have overruled Steele *v.* The Phœnix Ins. Co., do not touch this case; they are confined to cases of *personal* estate, and do not affect cases in which the grantor of land is the witness offered. The grantor of land is a good witness to support his grant.

*John P. Montgomery* and *Ingraham*, for the defendant in error.— The error assigned here is, that the court below erred in the admission of Schneck, and that the verdict on the issue was conclusive; the objection to Schneck's testimony being, not that it did not prove the mode of executing the paper, but that the paper could not be the will of the testatrix, because it gave Hoover only a *life* estate, and the witness said "she wanted him to have all." [GIBSON, C. J.—This will has a *mark* to it. Is that sufficient under the act of 1833?] No doubt, so late as 1839, appears to have been entertained by the profession on the subject; and the opinion of this court, (Stricker *v.* Groves, 5 Whart. 397,) instances a *mark* as the mode of "authenticating" a will by a testator who *could* write, but whose hands were disabled, and so does Cavett's Appeal, decided in 1844, (8 Watts & Serg. 21,) the defect of proof was the question there; here the testatrix could not write, as well from ignorance as physical inability. [GIBSON, C. J.—I think Grobell's case, at Lancaster, last summer, went the length of deciding that a mark could not be used in any case.] The case is not in point, and will create great confusion if that be the doctrine. The statute does not require, that to authenticate a will, it shall be "signed by the

testator's *writing* his name at the end of it, or by expressly request-ing some one to do so for him, if incapacitated by extremity of sick-ness;" the requisition is that the "will shall be in writing, and *signed* at the end by the testator, or some one for him;" that is, that he shall put, or cause to be put, *something visible* at the end of his will, to authenticate it, which two witnesses can prove. It may be his sig-nature, or a mark; both are *signs* of his intention and act. The statute neither selects nor prescribes any thing but the *place* where it is to be put; and hence any character or substance may be used. To "subscribe" does not mean to *write the name*. Harrison *v.* Har-rison; Addy *v.* Grix, 8 Ves. jun. 185, 504.

Is there any thing in the statute that requires proof that if the party authenticating chooses to stamp his name, or use a mark, that he cannot *write* it? or cannot write? or, in other words, that some-thing *more* must be proved than the legal execution of the will?

Has it ever been required by any decision, that, in addition to the mark, recognition of, &c., the party claiming under a will shall, in the first instance, as part of the execution, prove that the testa-tor could not write, either from ignorance or sickness? Baker *v.* Dening, 8 Adolph. & Ellis, 94, (35 E. C. L. R.,) is exactly in point. There the will, to which the testator has signed his name, was re-voked by a codicil "signed" with a mark, and the judge would not allow a doubt to be raised about it, upon a statute the same as ours. Fisher's act, 1 Vict. c. 26, p. 49; Jackson *v.* Van Dusen, 5 Johns. Rep. 144; and Mason *v.* Harrison, 5 Har. & Johns. 480, are in point.

As to the rejection of the testimony of Mrs. Hoffman and Telley, Patterson *v.* Reed, 7 Watts & Serg. 144; Leiper *v.* Peirce, 6 Watts & Serg. 555; Post *v.* Avery, 5 Watts & Serg. 509; and Cochran *v.* McTeague, 8 Watts & Serg. 272, were cited; and on the point of the exhaustion of Mrs. Hoover's power by the mortgage, Schuylkill Navigation Co. *v.* Woburn, 7 Serg. & Rawle, 411; Rickert *v.* Madeira, 1 Rawle, 328. They also insisted that the question that the verdict on an issue *devisavit vel non* was conclu-sive only as regards *personal* estate, was settled in Pennsylvania, and the courts would not allow a doubt to be raised about it.

BELL, J.—The principal question presented by the record for adjudication, is whether, on the trial of the cause below, the legal execution of the paper averred to be the last will of Barbara Hoover, was duly proved? Considered independently of the pos-sibility which seems to be contemplated by the sixth section of the act of 8th April, 1833, of a party being prevented by the extremity

of his last sickness, from either signing his last will, or procuring another to do it for him,—a contingency the present case does not offer for consideration,—the clear result of all the cases decided by this court, within the provision of that section, and particularly of Cavett's Appeal, 8 Watts & Serg. 21; and Barr *v.* Strobill, not yet reported, is, that the proposed testator must sign the testamentary instrument by his own proper signature, if he be able to do so, but if prevented from doing this by sickness, infirmity, or other incapacity, recourse is to be had to the alternative mode of authentication pointed out by the statute, to wit, signing the testator's name to the instrument, at the end thereof, by some person in his presence, and by his express direction. To validate the latter mode of execution, two things must concur, and both must be expressly established by the oaths of two witnesses, at least. 1st. That the party was incompetent to the task of affixing his own proper signature; and 2d. An express request emanating from him to some third person as his substitute and amanuensis, complied with in his presence. A "mark" made by the party proposing a testamentary disposition, is insufficient in any case, and so is the name of such party, written by another person, unless so written in accordance with the directions of the statute. It is true that in Stricker *v.* Groves, 5 Whart. 397, where the alleged will was not signed or attested in any way, Mr. Justice Rogers, who delivered the opinion of the court, observed, "there was nothing to prevent him (the alleged testator) from authenticating the paper by his mark," and hence an argument is deduced, that, according to the then opinion of the court, authentication by a "mark," would, in some cases, be sufficient. But it is to be observed, that this remark is but a *dictum*, which fell from the learned judge incidentally, not being called for by the point of the case. It was made, too, before this portion of our statute of wills was so fully considered as it has been since that case was determined. It may be proper to say, in order that the question may be considered as definitively settled, that we all concur in the opinion now expressed on this point.

The reasons for a rigid adherence to the directions of the statute, in this particular, are so fully and ably set forth in the cases alluded to, as to render any repetition of them here unnecessary. The evils that have been experienced from admitting a latitudinarian construction of analogous laws, have been too severely felt to leave us at liberty to disregard the emphatic warning they address to every well-informed legal mind against the indulgence of a similar spirit of judicial interpretation.

VOL. V.—5

In the present case it does not distinctly appear, from the evidence spread on our paper books, whether Barbara Hoover was sufficiently educated to write her name, or whether she was prevented from doing so by bodily disease, and the debility consequent upon it. But if either of these propositions had been established by the requisite proof, it is nowhere shown that her name was written to the paper set up as her will, in her presence, and in pursuance of an express request preferred by her, to that effect. If she were of sufficient mental capacity to exercise the *jus disponendi*, and possessed enough of bodily vigour to affix her mark to the paper in question, it cannot be averred that she was incompetent to the effort of a request to some person to write her name for her, and in her presence. The *onus* of showing both the inability to write, from whatever cause, and the consequent request to another, lies upon him who avers a testamentary disposition. But as neither the one nor the other was shown by the plaintiffs below, it follows, upon the principles indicated, the paper in dispute should not have been given to the jury as a last will duly executed, according to the statute. For this reason the judgment must be reversed. But as the parties litigant are to be sent to another trial, it becomes necessary to consider and determine the other errors assigned in this court. Before leaving this part of the case, however, it is proper to say that the answer of the court below to that part of the defendant's sixth point which assumes the paper not to be the will of Mrs. Hoover, because before or about the time when she placed her "mark" upon it, she said "she wanted Mr. Hoover to have all her estate," is perfectly correct. If it were executed, according to the forms prescribed by law, by a person of sane mind, not circumvented by fraud, or undue influence, it is, in itself, the only legal evidence of the intended disposition of her property by the testatrix.

The question of evidence, and the points submitted, based upon the supposed conclusiveness of the verdict and judgment rendered upon the trial of the feigned issue, proved in the Court of Common Pleas of Philadelphia county, in pursuance of the directions of the register of wills of that county, may be disposed of in a few words. Indeed, the errors assigned in these particulars of the case were but faintly urged on the argument. From a very early period of the history of our law, it has been uniformly held that the decision of a register repudiating a will, and the verdict of a jury condemning it, is absolute only as to personal estate, but is not conclusive on the title of real estate. Spangler *v.* Rambler, 4 Serg. & Rawle,

192; Smith v. Bonsall, 5 Rawle, 86; and cases there cited. This is the universal understanding of the profession in this state, and has grown to be a settled rule of property, not to be disturbed by judicial interference, without danger of disastrous results. If it be desirable to have it changed, it can only be safely done by legislative interposition, looking to a prospective alteration, without meddling with vested interests acquired and held under a well-ascertained principle of the law of estates. As to the third point of the defendant below, which proceeds upon the supposition, that the equity of redemption, remaining in Mrs. Hoover after the execution and delivery of the mortgage to Isaac Barton, was but a chattel interest; it is sufficient to say that it is based upon an entire misapprehension. An equity of redemption is everywhere considered as an interest in the land mortgaged, which will descend upon the heir of the mortgagor, who, in legal contemplation, continues to be the owner of the land for every beneficial purpose. Indeed, the doctrine now is, that a mortgage, although in form a conveyance of land, is, in substance, but a security for the payment of money. Rickert v. Madeira, 1 Rawle, 328, 329. So far has this been carried, that a devise of a man's personal estate carries with it all his mortgages, and it is the result of the cases in Pennsylvania, and several of the other states, that though the land mortgaged may be taken in execution for the debt of the mortgagor, it is not so liable upon process against the mortgagee, before foreclosure of the equity of redemption. Rickert v. Madeira, supra; Blanchard v. Colburn and wife, 16 Mass. Rep. 346; Jackson ex dem. Norton et al. v. Willard, 4 Johns. 41. Emphatically, in this state, a mortgage, like a judgment, confers upon the mortgagee nothing more than a lien on the land, which may be defeated by payment of the money loaned, at any time before sale made by the sheriff, in pursuance of our acts of Assembly, giving a remedy to the creditor. Notwithstanding the mortgage, therefore, an inheritable estate in the land remained in Mrs. Hoover, and, consequently, if this were even necessary to prevent the conclusiveness of the judgment in the feigned issue—which is by no means to be admitted—her devisees are not precluded from setting up the alleged will.

This brings us to the consideration of the second and fourth propositions of the defendant below, to the effect that the conveyance by mortgage to Isaac Barton operated as a full execution of the powers of appointment and revocation vested in Mrs. Hoover by the deed of trust from Philip Justus and wife to Samuel Asay, and these being exhausted, the plaintiff below can take nothing by vir-

tue of a will inoperative for lack of power to make it. But here, again, the defendant is mistaken. By the deed of trust, plenary powers of appointment by deed or will are conferred upon the *cestui que trust*. She was, also, authorized to make the trusts created by the deed, or any other she might thereafter appoint, and convey the premises to any person or persons, either in fee-simple or by way of mortgage. Accordingly, by the deed of mortgage, she did alter and change the uses and estates created by the deed of trust, and appointed that the trustee should hold the premises for the use of Isaac Barton, by way of mortgage. But, as will presently be shown, this was but a partial execution of the power of appointment and revocation, affecting the general powers given only *pro tanto*, for though the words of revocation used in the mortgage deed are general and unrestrained, they are to be accepted and construed in subordination of the principal intent of the parties to it, and this, doubtless, was to interfere no further with the estates, powers, and interests, vested in and conferred on Mrs. Hoover, than was necessary to give effect to the mortgage. The question then is, how far does this necessity extend? It is a settled rule in equity that powers appendant, as in the present instance, may be exercised at different times, over different portions of the land made subject to them, and also over different portions of the estate, the only consequence of a partial execution, as to the estate, as, for instance, where one having the freehold, with power of appointment, makes a lease for years, being to postpone the right of possession under a future exercise of the power over the residue of the estate, until the termination of the estate created in the first instance; but this does not suspend the right to execute the residue of the power and perfect the title to the estate granted. Wilson *v.* Troup, 2 Cow. 237; Johnson *v.* Yeats, 9 Dana, 497. On the same principle, a power may be executed in part at one time, and in part at another; as in the case of a tenant for life, with a full power to jointure, he may execute it in part, and afterward execute it for the rest, in the same wife. Zouch *v.* Woolston, 2 Burr, 1136; Hervey *v.* Hervey, 1 Atk. 561; and see Doe *v.* Milborne, 2 Term Rep. 721; 2 Crabb on Real Property, 704. To lead the application of this principle to the case in hand, it is only necessary to show that where one has a full power of appointment of the fee-simple, with power of revocation, as here, the creation of a mortgage is considered in equity as but a partial execution of the power. And fortunately, this is settled to our hand by authority beyond the reach of controversy. In Perkins *v.* Walker, 1 Ver. 97, and

Thorne *v.* Thorne, 1 Ver. 141, cited with approbation by Mr. Sugden, in his Treatise on Powers, it is ruled, that if a man have a general power of appointment and of revocation, and he appoint to one in fee by way of mortgage, the power is considered as wholly executed at law; but as equity considers a mortgage merely as a security for the debt, the appointment, in equity, operates as a partial execution only, and it is a revocation of the prior uses and estates only *pro tanto*. It is, therefore, clear, that after the execution of the mortgage in question, there remained in Mrs. Hoover's trustee, not only the equity of redemption, but also, in her, a further power of appointment, according to the terms of the deed creating it, which has or might have been duly exercised by means of a last will, subject only to the claim of the mortgagee for the amount of his debt.

The eighth and ninth points submitted by the defendant below were properly answered by the court. The error assigned in respect to them was not insisted on in the argument, and I do not deem it necessary to elaborate an argument to prove it unfounded. Nor do I perceive any well-founded objection to the answer returned to the tenth point. There was such evidence of the testatrix's knowledge of the contents of the paper alleged to be her will, as justified the court in leaving it to the jury as matter of fact.

It only remains to consider such of the bills of exception to evidence, assigned for error here, as have not been touched on. And first, the exception that the court erred in admitting the testimony of Daniel Schneck. We see no error in this. Even if the reason assigned on the record would, if shown, have constituted a valid objection, which is by no means clear, it suffices that, at the time the witness was offered to testify, it could not appear to the court that proceedings had been had before another tribunal, to test the validity of the paper offered as a will. Had the defendant proffered to show this, as the foundation of his objection, the court would not have been justified in arresting the plaintiff's case, to let in such countervailing proof.

Nor do we perceive any error in the rejection of the proffered testimony of Ann Hoffman and Susan Telley. Both these individuals, at the commencement of this litigation, were heirs at law of Mrs. Hoover, the deceased, and, as such, interested in the controversy. They come, therefore, clearly within the principle of Post *v.* Avery, 5 Watts & Serg. 509, and the subsequent cases of the same class, overruling Steele *v.* The Phœnix Insurance Co., and, consequently, their deed conveying their interest in the land,

D

the subject of the dispute, will not operate to confer upon them the character of competent witnesses.    It is no answer to say they are not parties to the feigned issue, directed by the District Court, to try the rival claims of the heirs at law and devisees of Mrs. Hoover. Though not so in form, they are so in effect, and the rule is broad enough to embrace all who are actual parties to the litigation, though the form adopted to try conflicting rights may not bring the names of all upon the record, as parties.    This is especially so in feigned issues directed to inform the conscience of the court, when it is discretionary with the tribunal ordering the issue, to select the ostensible parties to it.    The witnesses offered were within the mischief intended to be prevented by the later cases, and, therefore, within the prohibition of those cases.

What has been said, it is believed, embraces all the errors assigned, and it will be perceived we find no objection to the action of the court below, except in ruling that the legal execution of the paper set up as the last will of Barbara Hoover, had been duly proved.    On this ground, alone, the judgment is reversed.

Judgment reversed, and a <em>venire de novo</em> awarded.