## TRAPNALL'S ADX. VS. THE STATE BANK.

Where a notice is given to take depositions "at the office of the clerk," etc., and the officer taking them, certifies that the witness " was sick and unable to get in the office, and the depositions were taken in front of the office in a carriage," it is a sufficient compliance with the terms of the notice in the absence of any showing that the opposite party desired to cross-examine the witness, and missed the opportunity of doing so.

There being a rule of Court, that formal objections to depositions must be made within a reasonable time after publication, or they will be considered as waived, and a motion to suppress depositions for such objections having been made and overruled in the Court below, this Court will presume, in favor of the correctness of the judgment of the Court, in the absence of affirmative showing to the contrary, that the motion was not made within a reasonable time.

The estate of the mortgagee in land, before foreclosure, or at least before entry, is not the subject of execution, though there has been a default, and the condition is forfeited.    (1 Eng. R. 269; 6 Ib 94; 7 Ib. 581; 15 Ark. Rep. 65.)

Judgments against infants are not void, even where the Court omits to appoint a guardian for them: they are merely voidable; and can be avoided only by appeal, writ of error, or some other direct proceeding for the purpose of setting them aside, and not by an act in pais—such as the executing of a mortgage of land upon which the judgments are a lien.

*Appeal from the Circuit Court of Pulaski county in Chancery.*

Hon. WILLIAM H. FEILD, Circuit Judge.

WATKINS & GALLAGHER and TRAPNALL for the appellant.

That all the contracts of an infant are voidable, and not void.   *Bing. on Infancy* 11 note 2; 2 *Kent's Com.* 236; *Story on Con.* sec. 38; *Reeves Dom. Rel.* 251, and cases cited; 1 *Am. Lead. Cas.* 90 et seq., 104 et seq., and authorities cited; 3 *Bac. Abr.* 546-7; *Cro. Jac.* 465; 2 *Tidd Pr.* 436; 19 *J. R.* 422; *Bing. on Infancy* 27 n 2; *Burr.* 1794, 1808; 5 *B. & Ald.* 759.

54          CASES IN THE SUPREME COURT

Trapnall's adx. vs. The State Bank.                    [JULY

*Ames*

That a judgment rendered against an infant is not void, but only erroneous, and cannot be impeached collaterally.  1 *Lead. Cas.* ~~in Eq.~~ 119, 120, 121, 122.

That the infant, or perhaps his executor or administrator, only can take advantage of his disability. *Bing. on Inf.* 48; *Smith vs. Mayo*, 9 *Mass.* 62; *Jefford vs. Ringgold*, 6 *Ala.* 544; *Warlin vs. Mayo*, 10 *Mass.* 137; *Bac. Abr. Infancy* 6; 8 *Metc.* 196; 1 *J. J. Marsh.* 236; 2 *Dev. & Bat.* 323.

HEMPSTEAD, contra.

That a mortgagee, before foreclosure, has no estate that is subject to execution. 4 *Kent* 161; 4 *J. R.* 41; 1 *Eng.* 269; 6 *Blackf.* 113; 16 *Ohio* 469.

Mr. Chief Justice ENGLISH delivered the opinion of the Court.

On the 29th of September, 1848, Frederick W. Trapnall filed a bill for injunction, and to quiet title, etc., against the Bank of the State, in the Pulaski Circuit Court, alleging in substance, as follows:

On the 22d November, 1843, Richard C. Byrd and wife, and William J. Byrd and wife, executed a mortgage to the Bank, with power of sale, on lots 1, 2, 3, 4, 5 and 6, in block 2, in the city of Little Rock, East of the Quapaw line, to secure the payment of a note for $13,375, which the Byrds had made to the Bank, on the same day, due at twelve months, subject to renewal.

On the 3d of March, 1835, all of said lots were conveyed by Governor Pope to Wm. J. Byrd.

On the —— day of —— 1840, William J. Byrd conveyed to Richard C. Byrd, lot 6, and 12 feet off of the west side of lot 5.

The lots remained in the possession of the Byrds, who had made valuable improvements thereon, until the said conveyance to the Bank, and up to the sale of them by the Marshal, as hereafter stated.

On the 20th of May, 1842, Trapnall & Cocke recovered two judgments in the Pulaski Circuit Court against William J. Byrd: on which, executions issued 25th February, 1845, were levied,

by the Sheriff upon all of said lots, which were sold on the 25th of April following, and purchased by Frederick W· Trapnall, the complainant, for $225, who took the Sheriff's deed therefor.

After this, Richard C. Byrd, and E. L. Johnson, the attorney of the Bank, representing to complainant, that the said debt due by the Byrds to the Bank would be lost, unless she could get the title to the lots, acquired as aforesaid by complainant, proposed to him that the Bank should pay to him the amount of the two judgments of Trapnall & Cocke against Wm. J. Byrd, and take a deed for lots 1, 2, 3, 4, and the east half of 5; to which complainant consented; and on the 20th of June, 1845, Thornton, the Financial Receiver of the Bank, paid to complainant $1,075, the amount of said judgments; whereupon, complainant and wife executed to the Bank a deed for said lots, 1, 2, 3, 4, and the last half of 5.

By which sale, purchase, and deed from the Sheriff to complainant, and deed from him and wife to the Bank, it is averred, the title of the Byrds to said lots was extinguished; and all their right, title and interest vested in the Bank.

That at the time it was agreed, as aforesaid, that the Bank should pay off said judgments, and receive a title from complainant to said lots, it was agreed and understood verbally between the Bank and Richard C. Byrd, that the Bank should have the property valued by two persons, one selected by Byrd, and the other by the Bank, and when valued, the Bank should have credit on the amount of the valuation for the sum paid by her, as aforesaid, to complainant, and that the residue of the valuation should be placed to the credit of said Richard C. and Wm. J. Byrd, upon their said note to the Bank: but for some cause or other the valuation had not been made.

On the 23d of April, 1045, the United States recovered judgment against the Bank in the Circuit Court of the U. S., for the district of Arkansas; execution was issued thereon, on the 1st Nov. 1845, and on the same day levied by the Marshal of the district on the whole of said lots 1, 2, 3, 4, 5 and 6, which were sold by him on the 13th April, 1846, and purchased by complainant at $1,400, and conveyed to him by the Marshal.

That Richard C. and W. J. Byrd had wholly failed, up to and at the time when said levy and sale were made, to pay to the Bank any one of the instalments on their said note, or to renew the same according to the regulations of the Bank, and the conditions of said deed (of mortgage,) so made by them as aforesaid, had in no respect been performed by them, and the mortgage had been forfeited, and the title to said lots had vested, by said failure of the Byrds, in the Bank; and that the entire interest of the Bank in said lots was properly and according to law subject to said execution.

That possession of the premises was delivered to complainant under his purchase, as aforesaid, and he had since expended large sums of money in making improvements thereon.

That the Bank had refused to acquiesce in the title of complainant, and was proceeding to have the lots sold under the mortgage, etc.

Prayer that the bank be enjoined from selling the lots under the mortgage, and that the title of complainant be quieted.

The answer of the Bank admits the execution of the mortgage to the Bank, by the Byrds, as alleged in the bill,—the conveyance of the lots by Gov. Pope to Wm. J. Byrd—that he, when a minor, in the year 1838, conveyed to his father, Richard C. Byrd, lot 6, and twelve feet off of the west side of lot 5; but respondent avers that this deed was made without consideration, and was a fraud in law.

Admits the recovery of the two judgments by Trapnall & Cocke against Wm. J. Byrd in the Pulaski Circuit Court (the complainant being the same Trapnall,) but avers that said Wm. J. was a minor, of tender years, at that time, and that the Statute in that behalf was not complied with, and that said judgments, and all proceedings had under them, were absolutely void.

Admits that respondent paid to complainant the amount of said judgments, and took from him and wife a conveyance of said lots, as stated in the bill; but avers that she, (the Bank) believed at the time that the title of complainant and his right to convey were good and perfect, when in truth, his title was

OF THE STATE OF ARKANSAS. 57

Term, 1856.]                    Trapnall's adx. vs. The State Bank.

worthless, and that respondent paid him the money, and took said conveyance, under a mistake, and in equity and good conscience was entitled to relief in the premises.

Respondent denies that the said sale and purchase, and deed from the Sheriff to complainant, and from him to her, extinguished the title of Wm. J. Byrd to said lots, and vested it in her, as alleged, but respondent avers that the whole proceedings, which resulted in the conveyance, by complainant and wife, to her, of lots 1, 2, 3, 4, and the east half of lot 5, were null and void.

Knows nothing of any agreement or understanding between the Bank and Richard C. Byrd in regard to the valuation of the property, as alleged in the bill, but denies that any such agreement or understanding, was entered into.

Admits the recovery of the judgment by the United States against the Bank, issuance of execution thereon, levy upon and sale of all the lots by the Marshal, purchase by, and conveyance to complainant, as alleged: but denies that the Bank held any property in the lots subject to execution: her only title being the mortgage of the Byrds, which had not been foreclosed, nor the lots sold under the power of sale contained therein. Respondent denies that the failure of the Byrds to comply with the conditions of the mortgage, forfeited their right and title in equity, or vested the absolute title to the lots in the Bank, so as to subject them to execution as her property.

Respondent admits that complainant obtained possession of the lots as alleged, but does not know, nor does she believe, that he has made any improvements thereon.

Trapnall filed an amendment to his bill, alleging that after said judgments were rendered against Wm. J. Byrd, as stated in the original bill, and before said executions were issued and levied on the lots, the said Wm. J. being then of full age (there being some doubt whether he was of age at the time when the judgments were rendered,) by his writing, under seal, which is exhibited, and for the consideration therein expressed, etc., affirmed said judgments and waived all objections thereto, on the ground of his infancy.

The instrument of affirmance bears *date 27th May*, 1844.

The Bank· answered the amendment to the bill, alleging that the execution of the instrument of affirmance by Wm. J. Byrd, was a fraud attempted to be perpetrated upon her, and insisting that the whole proceeding under the said judgments, rendered against said Wm. J., when he was an infant, should in equity and good conscience be decreed null and absolutely void in law.

The cause was heard upon bill, exhibits, answer, replication, and the deposition of Richard C. Byrd, taken on the part of the complainant.

Byrd testified that the Bank agreed with him that the lots in controversy, which Trapnall sold to the Bank, were to be valued by two disinterested persons, and all over $1,065, was to be credited on his note, or notes, in the Bank. That the object of this arrangement was to vest the entire title to the property in the Bank.

The Court decreed, that the Bank be perpetually enjoined from selling under the mortgage, lots 1, 2, 3, 4, and the east half of lot 5; but refused the injunction as to the west half of 5, and the whole of lot six.

Both parties appealed to this Court.

In the meantime the complainant departed this life, and the cause was revived in the name of his administratrix.

1. One of the errors assigned by the Bank is, that the Court below overruled her motion to suppress the deposition of Byrd.

The motion to suppress was based upon two objections to the deposition; *first*, that it was not taken at the place named in the notice, and *second*, that Byrd was an incompetent witness in the cause.

The notice was, that the deposition would be taken, " *at the office of the Clerk* of the Jefferson Circuit Court, in the town of Pine Bluff," etc.

The magistrate who took the deposition states in the caption to his return, that the deposition was taken, " *in front of the office* of the Clerk of the Jefferson Circuit Court in the town of Pine Bluff," etc., and in his final certificate the magistrate states,

" that the said Richard C. Byrd was sick, and unable to get *to the Clerk's office,*etc., and the deposition was taken in *front of the Clerk's office, in a carryall, that said Byrd was hauled in,"* etc.

If the witness was sick, and unable to get into the Clerk's office, but was brought in his carriage to the *front of the office,* and the deposition taken there, as appears to have been the case from the magistrate's certificate, it would seem that this ought to be regarded as a substantial compliance with the terms of the notice. The words, " *at the Clerk's office,"* used in the notice, could hardly be understood to mean that the witness and the officer must be *in the office* when the deposition was taken. They might be in *front of it,* and yet be *at it.* The object of the law in requiring notice to be given of the *place* of taking the deposition, is that the opposite party may have an opportunity of being present, to cross-examine the witness if he desires to do so.

In the absence of any showing that the Bank desired to cross-examine Byrd, and missed the opportunity of doing so, by reason of the failure of the magistrate to comply *literally* with the terms of the notice as to the place of taking the deposition, we think the Court below did not err in refusing to suppress the deposition for the first objection.

But, there is another ground upon which the refusal of the Court to suppress the deposition for the first objection must be sustained. By a rule of practice previously established by the Court below, and copied in the bill of exceptions, formal objections to depositions, such as the one under consideration, were required to be made within a reasonable time after publication, or they were to be regarded on the hearing as having been waived. The deposition of Byrd was taken on the 3d of May, 1854; but when it was published does not appear from the record before us. The motion to suppress was made on the 19th of December, 1854; and the cause was heard on the 22d of the same month. We must presume in favor of the correctness of the judgment of the Court below, in the absence of any affirmative showing to the contrary, that the motion to suppress

was not made within a reasonable time after publication, as required by the rule of the Court.

But little need be said of the *second* objection to the deposition, taken in the motion to suppress.

The counsel for the Bank has not in his argument here, nor in the motion, undertaken to specify in what particular he deems Byrd to have been an incompetent witness for the complainant. He was not a party to the suit, and we do not understand that he is in any way legally interested in its result or that his rights are to be affected by the decree. But, in the view that we shall take of the case, his deposition will be of no consequence.

2. The question arising upon Trapnall's appeal is, whether he had such title to the *west half* of lot *five*, and the whole of lot *six*, as entitled him to the relief sought by the bill, and refused by the Court, as to these portions of the property in dispute.

It is not disputed that Wm. J. Byrd derived title to all of the lots, in the year 1835, from Gov. Pope.

The bill and answer agree that in 1838, or in 1840, Wm. J. Byrd conveyed to his father, Richard C. Byrd, lot 6, and *twelve feet off* of the west side of lot 5. The Bank alleges that this deed was void for fraud, etc. She made no proof of this, but it matters not whether it was valid or void, so far as the question now under consideration is concerned.

On the 22d November, 1843, both of the Byrds joined in the mortgage, conveying all of the lots to the Bank; and this is the only title the Bank ever had, upon the record before us, *to the west half of lot* 5, and the whole of *lot* 6: which were not embraced in the deed of Trapnall and wife to the Bank. Under the execution in favor of the United States against the Bank, Trapnall purchased all *six of the lots*, and took the Marshal's deed therefor, but by this purchase, he obtained no title to the *west half of lot* 5, *and the whole of lot* 6, unless the title of the Bank, as mortgagee, was subject to sale under execution.

But it is very well settled that the estate of the mortgagee in land, before foreclosure, or, at least before entry, is not the subject of execution, not even though there has been a default,

OF THE STATE OF ARKANSAS. **61**

TERM, 1856 ]                    Trapnall's adx. vs. The State Bank.

and the condition of the mortgage is forfeited. 4 *Kent,* 161. *Blanchard vs. Colburn et al.,* 16 *Mass.* 345. *Glass vs. Ellison,* 9 *New Hamp. R.* 69. *Jackson vs. Willard,* 4 *John. R.* 41. *Eaton vs. Whiting,* 3 *Pick.* 484. *Buck et al. vs. Sanders et al.,* 1 *Dana R.* 188–9. *Rickert vs. Maderia,* 1 *Rawle* 325. *Huntington vs. Smith,* 4 *Conn.* 235. *State vs. Lawson et al.,* 1 *Eng. R.* 269. *Whiting & Slark vs. Beebe et al.,* 7 *Eng.* 581. *Crittenden vs. Johnson,* 6 *Eng.* 94. *Pettit et al. as. Johnson et al.,* 15 *Ark.* 65.

For the protection of the interest of the mortgagee, and in order to give him the full benefit of the security, it is held that the legal estate passes by the mortgage: but for other purposes, the mortgage is, in general, held to be a mere security for the debt. *Southerin vs. Mendurn,* 5 *New Hamp. R.* 429. *Glass vs. Ellis* 9 *Ib.* 69·

The *sixth clause* of the 25th *sec. chapter* 67 *Digest, p.* 498, which subjects to execution " all real estate, whether patented or not, whereof the defendant, or any person for his use, was seized, *in law or equity,* on the day of the rendition of the judgment, order or decree, whereon execution issued, or at any time thereafter," has not been held to change the well established rule, that the estate of the mortgagee, before foreclosure or entry, is not subject to execution, ¦and there are many good reasons, why it should not be so construed, to be found in the authorities above cited.

It follows that Trapnall derived no title to *lot* 6, and the *west half of five* by his purchase under the execution against the Bank.

He shows upon the record before us no title to these portions of the property from any other source. The bill alleges that he purchased, and obtained the Sheriff's deed for all the lots, under the executions against Wm. J. Byrd issued upon the judgments of Trapnall & Cocke, but the Sheriff's deed exhibited with the bill, embraces only lots 1, 2, 3, 4, the *east half of five,* and lot 6. It does not include the *west half of* 5.

Moreover, the bill alleges that in 1840, and prior to the date of the judgments of Trapnall & Cocke, against Wm. J. Byrd, he conveyed to his father, Richard C. Byrd, lot 6; and the bill

does not, in any manner, attack the validity of this conveyance. According to the allegations of the bill, therefore, Trapnall obtained no title to lot 6, by the Sheriff's deed.

The decree of the Court below upon the appeal of Trapnall's administratrix, must, therefore, be affirmed.

3. Upon the appeal of the Bank, the title of Trapnall to lots 1, 2, 3, 4, and the east half of five, is to be determined.

He purchased these lots under the judgments of Trapnall & Cocke against Wm. J. Byrd, rendered 20th May, 1842, conveyed them to the Bank, and afterwards purchased them again at the Marshal's sale under the judgment of the United States against the Bank.

The Bank insists that the judgments against Byrd were null and void, because of his infancy, etc.

The bill alleges the recovery of these judgments, the issuance of executions thereon, levy and sale of the lots, the purchase by Trapnall and the Sheriff's conveyance to him, but exhibits no part of these proceedings, but the Sheriff's deed.

The answer of the Bank admitting these allegations, avers by way of avoidance that Byrd was an infant of tender years when the judgments were rendered against him, that the Statute in that behalf was not complied with, and that the judgments were null and void. These were affirmative allegations by the Bank, and the replication putting them in issue, the burthen of proving them was upon her. But she made no proof of the infancy of Byrd, nor did she exhibit a transcript of the judgments and proceedings upon which they were based, in order that the Court might see whether they were regular or not.

It is true that, by an amendment to the bill, Trapnall states that, there being some doubt whether Byrd was of age when the judgments were rendered, he had obtained an affirmance of them by Byrd after he was of full age. Let it be admitted that this is a concession on the part of Trapnall that Byrd was an infant; then, upon the record before us, we have these facts and no others:—that two judgments were rendered against Byrd, an *infant*, by the Pulaski Circuit Court, a Court of general jur-

OF THE STATE OF ARKANSAS. **63**

TERM, 1856.]                Trapnall's adx. vs. The State Bank.

isdiction; and we are to determine upon these facts, whether the judgments were void or not.

In *Borden et al vs. State, use, etc.*, 6 *Eng. R.* 519, it is declared to be a general rule that, by the common law, the judgment of a superior Court is not void, but only voidable by plea or error.

And Mr. Justice SCOTT, in treating of the exceptions to this general rule, said:—" So, a judgment might even be void under some circumstances, from some peculiar and inflexible policy of the law, for the protection of infants, married women, idiots or lunatics." *Ib. p.* 551.

But he, by no means, meant that, as a general rule, judgments against infants, etc., are void. It is well understood that infants are liable for necessaries, and for torts, and that most of their contracts are not void, but voidable. And our Statute, recognizing their liability to be sued, provides that the Court shall appoint guardians to defend for them, etc. *Digest ch.* 126, *p.* 803.

On the contrary, the well established general rule is, that judgment against infants are not void, even where the Court omits to appoint a guardian to defend for them, but that they are merely voidable. *Allison vs. Taylor et al.*, 6 *Dana* 88. *Porter's heirs vs. Robinson*, 3 *A. K. Marshall R.* 254. *Austin vs. Charleston F. S.*, 8 *Metcalf R.* 196. *Bloom et al. vs. Burdick*, 1 *Hill R.* 130. *Patchin vs. Cromach*, 13 *Vermont R.* 330. 1 *American Leading cases, Hare & Wallace, p.* 120–1–2, *and cases cited.*

But it is insisted by the counsel for the Bank, that if the judgments were not void, but merely voidable, the execution of the mortgage to the Bank by Wm. J. Byrd, subsequent to the date of the judgments, was a *disaffirmance* of them, and destroyed their lien upon the lots.

There is nothing upon the face of the record before us to show that the judgments were not regular and valid; but conceding them to be voidable, they could not be avoided by the execution of the mortgage, which was an act *in pais*. The rule is, that where an infant does a voidable act, *in pais*, he may avoid it by some other act, *in pais*, of equal solemnity or noto-

riety, but where the act is matter of record, it must be avoided by some matter of record. The judgments in question could only be avoided by appeal, writ of error, or some other direct proceeding known to our laws, for the purpose of setting them aside. See the authorities above cited. Also, *Bingham on Infancy p.* 55-6. *Bool vs. Mix,* 27 *Wend. R.* 132. *Tucker et al. vs. Moreland,* 10 *Peters R.* 71. *Chase vs. Scott,* 14 *Vermont* 77. 2 *Kent* 237.

Upon the record before us, therefore, we must hold that the judgments in question were valid, and being prior to the mortgage, Trapnall's purchase under them vested in him the title to the lots, which he conveyed to the Bank, and afterwards purchased back at the Marshal's sale.

This view of the case renders it unnecessary to decide any of the other questions discussed by the counsel.

The decree of the Court below, on the appeal of the Bank, is affirmed: and both parties having unsuccessfully appealed, the costs of this Court must be divided between them equally.

Absent, Hon. C. C. Scott.