EVANS *v.* WILLIAMS.

## Opinion delivered May 8, 1916.

1. APPEAL AND ERROR—TRANSFER OF JUDGMENT—FINDING OF CHANCELLOR.
—The finding of the chancellor that a judgment against appellant
had been transferred from the original holder thereof to another
party, and was valid against appellant, although appellant had
advanced the money to pay off the same, *held* valid.

2. MORTGAGES—FORECLOSURE AGAINST WIDOW AND HEIRS—COLLATERAL
ATTACK BY MINOR HEIRS.—In a suit to foreclose a mortgage against
the widow and heirs of the deceased mortgagor, the decree order-
ing a sale, being regular on its face and showing that the court
had jurisdiction, is not subject to collateral attack by the minor
children.

3. BILLS AND NOTES—PAYMENT.—The evidence held to show payment
of a certain note held by a bank against appellant, by a check, sent
by appellant to the bank.

4. PRINCIPAL AND AGENT—COMMISSIONS DUE AGENT.—The finding of the
chancellor as to the amount due appellee as commissions for
services as confidential agent for appellant, *held*, erroneous.

Appeal from St. Francis Chancery Court; *Edward D. Robertson,* Chancellor; Case No. 4079 reversed; Case No. 4078 affirmed.

STATEMENT BY THE COURT.

Appellees in the first above styled case, brought suit to renew the order of sale of certain lands, decreed to be sold under a foreclosure of a mortgage, in the case of *J. W. Robinson, et al., trustees* v. *Mary E. Blanton, et al,* the day of sale of said lands in the original decree having passed and it being necessary to appoint a new commissioner for the purpose.

The petition stated that the Bank of Forrest City had guaranteed to the Home Life and Accident Co., the present owner of said decree, the payment of the amount thereof in the sale to it and was interested on that account in the foreclosure.

It appears that J. P. Blanton, now deceased, with his wife, Mary E. Blanton, now Evans, appellant herein, on January 28, 1901, executed to the Colonial and United States Mortgage Co. their promissory note for $5,000, due

January 1, 1906, with interest, and a deed of trust of the same date, on certain lands and town lots in St. Francis County, to secure the payment thereof.

J. P. Blanton died May 10, 1904, testate, his wife, Mary E. Blanton, their two children, minors, John Cecil and Annie Bell, were the sole beneficiaries under his will. The note was assigned by the mortgage company to John W. Robinson on April 11, 1910, who obtained said decree of foreclosure, in a suit against Mary E. Blanton and the minor children. The decree was assigned to the Bank of Forrest City January 13, 1911, which released the N. W. ¼ section 34, township 4 N. range 3 east, from its lien and assigned it afterwards on January 16, 1911, to the Mississippi Valley Life Insurance Co., which assigned it on December 9, 1912, to A. B. Banks, who on November 20, 1913, transferred it to the Home Life and Accident Co., which, with the Bank of Forrest City, brought this suit to renew the order of sale thereunder. Mrs. Blanton, who since married Evans, for herself and as next friend for the two minors, brought suit against Eugene Williams, the Bank of Forrest City, the Mississippi Valley Ins. Co., A. B. Banks and the Home Life and Accident Co. to cancel and set aside said decree, in which the order of sale was sought to be renewed in the other suit, alleging that it had been paid and fraudulently transferred, stating all the facts relative thereto, by Eugene Williams, the cashier of the Bank of Forrest City, who was her confidential adviser and agent.

The answers denied that the decree had been paid or fraudulently transferred and alleged the purchase in good faith of same by each assignee for a valuable consideration paid, and "for the purpose of saving a foreclosure or sale of the land condemned to be sold thereunder and of giving the plaintiff, Mary E. Evans, an extension of time thereon and with her knowledge, consent and by her approval, and that said decree is a valid and subsisting judgment against the land ordered to be sold thereunder."

Eugene Williams and the Bank of Forrest City answered, admitting the allegations of the complaint, except as to the payment and transfer of the decree, denied that the transfer thereof was fraudulent and alleged that the different transfers were made in order to secure an extension of time and that they were made with the knowledge, consent and approval of said Mary E. Evans, who was unable to pay it, stating all the facts relative thereto.

An amendment was filed to the complaint and a response to the motion or petition for appointment of a commissioner and order to sell, in which it is alleged that the decree was null and void as to the minors, since the demand was not presented to the executrix of the estate before suit brought thereon, and a judgment by default was rendered against the minor defendants.

A master was appointed to state an account and did so, covering a period of several years, showing the transactions between Eugene Williams, who was cashier of the bank, as agent of Mrs. Mary Evans, and the Bank of Forrest City and herself as a depositor in the bank.

The record is voluminous and the account intricate and the abstract and brief not especially helpful in clearing up certain points of contention. The undisputed testimony shows that Mrs. Evans sold a piece of her individual property for $4,000 cash, which she stated was done for the purpose of obtaining money to pay off the judgment of the Colonial mortgage; that she gave this money to Eugene Williams, the cashier of the Forrest City Bank, who was her confidential agent and adviser, which, with about $2,000 other money he held for her, she directed paid in satisfaction of said judgment.

Williams admitted taking the $4,000 and enough additional money from the bank, which was charged to her account, with which to pay the judgment; that he went to Memphis and paid this money to the owners of the judgment and took a transfer thereof to the Bank of Forrest City, he said, by the consent and approval of

Mrs. Evans, who had asked him to take care of the judgment and procure an extension of time, saying she was unable to do so. She flatly contradicted this statement and said it was for the purpose of paying the judgment; that it was directed by her to be paid and she had no information that it had not been paid until long afterwards and after several of the assignments had been made.

The evidence also discloses that Eugene Williams, the cashier of the bank, kept an account as her agent, depositing her funds to his credit as such, and from time to time transferring certain amounts to her credit, as a depositor, usually about the time her bank balance was becoming small and sometimes not till it had been largely overdrawn. He explained that this was done in order to discourage the expenditure of too much money on her part and because she was spending money in excess of her income and ability. The accounts kept by the bank show, however, that she was credited with the full amount for which the judgment sold upon the assignment of it, having been charged with the amount required to purchase it in the first instance, as Williams claimed was the only way in which to secure an extension of time and prevent a sale of the lands. The bank held a second mortgage upon the piece of land, the separate property of Mrs. Evans, sold by her for the $4,000 given to Williams for payment on the judgment, according to her contention.

The master's statement of account shows the balance due from Mrs. Evans to the bank, which included $453.11 to Eugene Williams for commissions for compensation as her agent, which was approved and confirmed in all things by the chancellor and sale of the lands ordered for the payment thereof, from which judgment this appeal comes.

*Grant Green, J. W. Morrow* and *C. W. Norton,* for appellants.

1. The decree in the original cause has been paid off in full. If not, it can not be enforced by Williams and

the bank and the suit was barred by non-claim. Kirby's Digest, §§ 6137-8; 73 Ark. 344; 84 S. W. 703; 85 *Id.* 561; 109 *Id.* 545; 88 Ark. 460; 114 S. W. 923; 92 Ark. 522.

2. The $300.00 note was paid and no foreclosure could be had for Williams' commissions, $453.11.

*R. J. Williams* and *Mann, Bussey & Mann,* for appellees.

1. The decree was not paid.

2. The $300.00 note was not paid.

3. The commissions were part of the expenses of the loan and properly included.

KIRBY, J. (after stating the facts). (1) We are unable to say, after a careful consideration of the whole record, that the chancellor's finding against the contention that the decree was paid and should have been satisfied, is clearly against the preponderance of the testimony. It is undoubtedly true that enough money to satisfy it was taken by Eugene Williams to Memphis and paid to the owner of the decree, but about $2,000 of this sum was furnished by the bank and charged against Mrs. Evans as a depositor and the other $4,000 was realized from a sale of a piece of land, her separate property, upon which the bank held a second mortgage. Said Williams, the bank cashier, stated positively that Mrs. Evans was unable to pay the decree, desired an extension of time that the lands might be saved to the estate or something realized from it therefor, and that he was unable in any other way to procure such extension. He took the transfer of the judgment to the bank and thereafter sold and transferred it, crediting her account as a depositor in the bank with the entire sum realized from its sale, the amount that was paid in the purchase of it. She made no complaint at the time about this transaction and, although it is true she said she had no notice of it, it is undisputed that the whole amount of the money realized from the assignment of the judgment by the bank, to which it was transferred in the first instance, was checked

out and used by her, which transaction corroborates the cashier's statement that it was but a purchase of the judgment in the first instance and a matter of bookkeeping in the accounts to secure the desired extension of time.

(2)    The contention that the debt upon which the Robinson decree was entered was barred by the statute of limitation, insofar as it affected the rights of the Blanton minors and should be set aside and vacated as to them, is without merit. The proceeding was an ordinary suit for foreclosure of a mortgage against the widow and heirs of the deceased mortgagor, Blanton, and not against the executrix of his estate, and there was no plea of the statute therein and the decree being regular on its face and showing the court had jurisdiction, is not subject to collateral attack by the minors.    22 Cyc. 804; *Trapnall* v. *State Bank,* 18 Ark. 53.

It is not such a decree as the infant heirs are allowed to show cause against by the statute (Section 6248 and Div. 8, Section 4431, Kirby's Digest), being one for the foreclosure and sale of mortgaged premises for the payment of the debt secured, and not to divest them of an interest in land or require of them a conveyance of lands in which they had a personal interest. *Blanton* v. *Rose,* 70 Ark. 415; *Paragould Trust Co.* v. *Perrin,* 103 Ark. 67. The decree in No. 4078 is accordingly affirmed.

(3)    It is urged in No. 4079 that the chancellor's finding that the $300 note, dated February 19, 1909, had not been paid, is not supported by the testimony, and this contention must be sustained.    There is a decided conflict in the testimony upon this point, the appellant testifying that she sent a check from Hot Springs for $300, payable to the order of the bank, which was later charged to her account, in payment of the note.    This check appeared to be personally endorsed on the back by her, and the cashier, who had no recollection of the transaction, thought from the endorsement that the money had been paid directly to her and it also appeared

that the amount of the note had been included in a larger note of later date, given in renewal of all her smaller notes due and unpaid to the time of its execution. Her positive statement that the note was paid with the check payable to the bank for the amount thereof, which was later charged to her account, and denial of the collection of the check or receipt of any money thereon, with the inability of the master to find where she could have been credited with the whole of said sum, if the principal part thereof had been paid to her in cash, as the cashier thought was the case, furnishes a clear preponderance of the testimony against the finding that the note was not paid.

The fact that the amount thereof was claimed to be included in a note for a much larger amount executed by her in renewal of all smaller notes, due and unpaid at the bank, is not entitled to much weight under the circumstances of this case, against the testimony showing the payment of the note, since she relied implicitly upon the bank cashier, who was her confidential agent and adviser, and executed such papers as he requested her to sign. The amount of the decree must, accordingly, be reduced by said sum of $300.

(4) The chancellor's finding relative to the commissions due Eugene Williams as agent for Mrs. Evans, for making collections and attending to her affairs, and foreclosing a lien therefor under the mortgage to the bank, is likewise erroneous. According to the master's report said Williams was not entitled to more than the sum of $953.11 on all business transacted, and the undisputed testimony, and his own admissions show that he has received and been paid more than $1,000.00 commissions for his services, and the finding that $453.11 was due him on that account was clearly against the great preponderance of the testimony, and since the mortgage, taken to secure her indebtedness to the bank, did not cover any indebtedness due to her said agent, the chancellor erred in so finding and decreeing a foreclosure therefor.

The decree is erroneous and will be reversed and the cause remanded with directions to reduce the amount of the recovery against appellant, Mrs. Evans, in the sum of the said items of $300, and $453.11—$753.11 in all, and to enter a decree for the balance due after making such reduction, and for foreclosure of the lien and sale of the land.

It is so ordered.