commencement, and Mr. C. V. Meredith at the final hearing—it is doing no injustice to either of these gentlemen, who well and ably performed their duties, to say that the laboring oar in the litigation, from its inception, fell to Mr. Sherwood. He was the counsel near to the complainants, and upon whom they mainly relied. He did most of the work —indeed, his master mind directed and controlled it; and it is only just to him to say that he showed great skill as a lawyer in the performance of his duties, and spared no labor that would inure to the benefit of his clients.

The court is satisfied the fee herein allowed is as small compensation as was ever allowed an attorney for like services, and that the amount thus named, with what the defendants in the petition admit they have paid for counsel in the cause, is only what would have been a very small fee, upon a cash basis, for the work performed by the combined counsel, or if performed by one of them. In this case, if the court were called upon to allow compensation to counsel out of the recovery had, or of funds under its direction, uncontrolled by the terms of any contract between parties, it would not, in view of the doubtful and unpleasant character of the litigation, the onerous services performed, and the success attained, think of allowing less than 50 per cent. of the recovery had, or of the amount under its control. To do otherwise would be unjust and unfair to counsel.

A decree may be entered in favor of the petitioner, Sherwood, against the defendants in the petition, for the amount hereinbefore allowed, less the sum received by him as aforesaid.

---

## In re THORP.

(District Court, E. D. Virginia. July 18, 1902.)

### No. 365.

1. BANKRUPTCY—SECURED CLAIMS—VALIDITY OF SECURITY—RECORD—RIGHTS OF TRUSTEE.

Bankr. Act July 1, 1898, c. 541, § 70a, 30 Stat. 565 [U. S. Comp. St. 1901, p. 3451], provides that the trustee in bankruptcy shall be vested by operation of law with the title of the bankrupt to property which, prior to the filing of the petition, he could have by any means transferred, or which might have been levied on and sold by any judicial process against him. Section 67a, 30 Stat. 564 [U. S. Comp. St. 1901, p. 3449], provides that claims which, for want of record, would not have been valid liens as against the claims of creditors of the bankrupt, shall not be liens against his estate; and section 67d declares that liens given or accepted in good faith, and not in contemplation of or in any fraud of the act, and for a present consideration, which have been recorded according to law, if record is necessary to impart notice, shall not be affected by the act. *Held*, that though, under section 70a, the title acquired by a bankrupt's trustee was only that held by the bankrupt at the time of the filing of the petition, yet where a lien on certain of the bankrupt's property was void as to any of his creditors under the state law by reason of a failure to record the same, such lien was void as to the trustee, under sections 67a, 67d, as to which he occupied the position of a bona fide purchaser for value.

In Bankruptcy. On objection of the trustee in bankruptcy to the allowance of any part of the claim of the John L. Roper Lumber Company as a secured claim.

The following is the opinion of Bernard, Referee:

Among the claims proven before the referee is that of the John L. Roper Lumber Company for the sum of $2,608.61, to secure a part of which, to wit, the sum of $1,412.74, the bankrupt, by a deed of trust dated April 17, 1899, and executed on or about that date, conveyed certain personalty to W. B. Roper, trustee, which deed, however, was not admitted to record until the 29th day of January, 1902, some twelve days after the bankrupt filed his petition and was adjudged a bankrupt. To the allowance of any part of this claim as a secured claim the trustee objects, and bases his objection on several grounds, only one of which need be mentioned, to wit, the failure of the trustee under the deed of trust to have the same admitted to record until after the debtor was adjudged a bankrupt. In this state of things, the trustee in bankruptcy contends that the deed, under the provisions of the bankruptcy act (Act July 1, 1898, c. 541), is invalid as against his, said trustee's, claim of title; section 70a (30 Stat. 565 [U. S. Comp. St. 1901, p. 3451]) of the act providing that the trustee "shall be vested by operation of law with the title of the bankrupt, as of the date he was adjudged a bankrupt, except so far as it is to property which is exempt, to * * * property which prior to the filing of the petition he could have by any means transferred or which might have been levied upon and sold under any judicial process against him"; and section 67a (30 Stat. 564 [U. S. Comp. St. 1901, p. 3449]) further providing that "claims which for want of record or other reasons would not have been valid liens as against the claims of creditors of the bankrupt shall not be liens against his estate." The bankrupt, says the counsel for the trustee, could have transferred the property conveyed by the deed of trust at any time before he was adjudged a bankrupt and the same might have been levied upon and sold under any judicial process against him. The counsel for the trustee further urges that the deed of trust, not having been admitted to record, was not valid against certain of the bankrupt's creditors, and therefore is not a lien against his estate. His contention is that the trustee in bankruptcy as to property conveyed by a deed of trust not recorded has the rights of an innocent purchaser for value without notice. In support of his contention the counsel for the trustee cites as authority the following decisions: In re J. S. Booth's Estate, 3 Am. Bankr. R. 574, 98 Fed. 975, decided by the District Court of Oregon in January, 1900, and In re Pekin Plow Company, 7 Am. Bankr. R. 369, 112 Fed. 308, 50 C. C. A. 257, decided by the Circuit Court of Appeals, Eighth Circuit, in November, 1901. The John L. Roper Lumber Company, in answer to the objection of the trustee to the allowance of a part of its claim as a secured debt, insists that section 70a of the bankruptcy act gives to the trustee only such title to property as the bankrupt had at the date of his adjudication, and that, as the bankrupt had at that date no title to the property conveyed by the deed of trust, except an equity of redemption, only this equity of redemption passed to the trustee. This creditor further contends that section 67a has no application to a case like that under consideration. In support of its contention the counsel for said creditor cites the following decisions, between which and those cited by the counsel for the trustee, there is conflict: National Bank of Chattanooga v. Rome Iron Company, 4 Am. Bankr. R. 441, 102 Fed. 755, decided by the United States Circuit Court, Northern District of Georgia, in May, 1900; In re Economical Printing Company, 6 Am. Bankr. R. 615, 110 Fed. 514, 49 C. C. A. 133, decided by the U. S. Circuit Court of Appeals, Second Circuit, in August, 1901; and In re Kellogg, 7 Am. Bankr. R. 270, 112 Fed. 52, decided by the District Court of the United States for the Western District of New York in November, 1901.

For the better understanding of the question under consideration some paragraphs from the opinions of the courts whose decisions are cited as authority will be quoted, taking first some from the opinion of the court in the case of the National Bank of Chattanooga v. Rome Iron Company, in which an un-

recorded mortgage was upheld as against the trustee in bankruptcy. District Judge Newman, delivering the opinion of the court in this case, said:

"Since the argument of this case I have been handed by counsel for the trustee a recent decision by Judge Bellinger, of Oregon, in the case of In re J. S. Booth's Estate, 3 Am. Bankr. R. 574, 98 Fed. 975, in which it is said, without citing authority, that the trustee in bankruptcy stands in the position of an innocent purchaser without notice. If this is the law, it would seem to defeat this lien, because it seems entirely clear that an innocent purchaser from the Rome Iron Company, without notice of the pledge to the Chattanooga National Bank, would have obtained a good title; but I must, with the utmost respect, differ with Judge Bellinger as to his opinion of the position in this respect of the trustee in bankruptcy."

After stating that "this question arose frequently under the bankrupt act of March 2, 1867 [chapter 176, 14 Stat. 517]," and citing several authorities to show this, Judge Newman, concluding his opinion, says:

"But counsel for the trustee contends that the bankrupt act of 1898 is different in this respect from the act of 1867, and he relies upon section 70a, par. 5, to sustain this view. The language of the provision relied on is as follows:

" 'Section 70a. The trustee of the estate of a bankrupt, upon his appointment and qualification * * * shall be vested by operation of law with the title of the bankrupt * * * to all (5) property which prior to the filing of the petition he could by any means have transferred, or which might have been levied upon and sold under judicial process against him.'.

"The provision of the bankrupt act of 1867 as to the title vesting in the assignee is as follows:

" 'All property conveyed by the bankrupt in fraud of his creditors; all rights in equity, choses in action, patent rights and copyrights; all debts due him, or any person for his use, and all liens and securities therefor; and all his rights of action for property or estate, real or personal; and for any cause of action which he had against any person arising from contract, or from the unlawful taking or detention, or injury to the property of the bankrupt; and all his rights of redeeming such property or estate; together with the like right, title, power, and ability to sell, manage, dispose of, sue for, and recover or defend the same, as the bankrupt might have had if no assignment had been made, shall, in virtue of the adjudication of bankruptcy and the appointment of his assignee, but subject to the exceptions stated in the preceding section, be at once vested in such assignee.' Rev. St. § 5046.

"I am unable to see how any distinction can be drawn, favorable to the contention of counsel for the trustee, between the two acts. The purpose of both acts, although different language is used, seems to be to vest in the trustee the title to the entire estate of the bankrupt; and no distinction can be perceived which justified the inference that under the last act the trustee takes the property of the bankrupt as an innocent purchaser without notice, and that in the former he did not. The conclusion is that the demurrer to the bill, upon all the grounds taken therein, must be overruled."

The learned district judge in the opinion from which the foregoing extracts are made shows very clearly that under the act of 1867 the assignee in bankruptcy did not take title to the bankrupt's property as an innocent purchaser for value without notice; but does he show that under the act of 1898 the trustee in bankruptcy does not practically take such title? Does he show that a claim under an unrecorded deed of trust is a lien against a bankrupt's estate, and should be so allowed?

Let us, however, draw further from the opinions of the courts in the cases cited by the counsel for the John L. Roper Lumber Company. In the case of In re Kellogg—the most recent of those cited by him, and the one in which the other two cited and relied upon by him were discussed and approved—District Judge Hazel, delivering the opinion of the court, and referring to section 70a, says:

"Counsel for trustee claims that by reason of this section the trustee acquires a greater title than the bankrupt himself had, to wit, a perfect title, which the bankrupt, under the present state of facts, might have transferred prior to the filing of the petition; that the trustee acquires, not the title of the bankrupt to all his property, but the title which he might have conveyed.

The most reasonable construction would seem to be that this section simply vests in the trustee the title which the bankrupt had to the property described in the section. It cannot be construed to grant to the trustee a higher title than was in the bankrupt at the time the property passed by operation of law to the trustee. The interest of the creditor in this property is affected by no other section of the bankruptcy statute, and his claim must stand or fall upon its proper construction. This view has recently been upheld by the Circuit Court of Appeals for this circuit.

"In Re New York Economical Printing Company, 6 Am. Bankr. R. 615, 619, 110 Fed. 514 [49 C. C. A. 133], the court said:

" 'The bankrupt act does not vest the trustee with any better right or title to the bankrupt's property than belongs to the bankrupt or to his creditors at the time when the trustee's title accrues. The present act, like all preceding bankrupt acts, contemplates that a lien good at that time as against the debtor and as against all of his creditors shall remain undisturbed. If it is one which has been obtained in contravention of some provision of the act which is fraudulent as to creditors or invalid as to creditors for want of record, it is invalid as to the trustee.'

"The case of Chattanooga National Bank v. Rome Iron Co. (C. C.) 4 Am. Bankr. R. 441, 102 Fed. 755, seems directly applicable to the case at bar. In that case the court directly holds that, except in cases affected by fraud or illegal preference, a trustee in bankruptcy, under the act of 1898, takes only the interest of the bankrupt in the assets of the estate, and holds such assets subject to the valid claims, liens, and equities enforceable against the bankrupt. There is no claim of fraud or illegal preference before the court in this case. The debt represented by the contract for the machines is set forth in the bankrupt's schedules as one secured by the machinery. The attorney for the trustee endeavors to distinguish the cases applicable to the question under discussion, decided under the act of 1867, and which were cited upon the argument, favorable to the contention of the creditor. The Chattanooga National Bank Case, supra, says upon this point, quoting section 70a of the act of July 1, 1898, c. 541, 30 Stat. 565 [U. S. Comp. St. 1901, p. 3451], and Rev. St. § 5046, which is the section applicable under the act of 1867:

" 'I am unable to see how any distinction can be drawn favorable to the contention of counsel for the trustee between the two acts. The purpose of both acts, although different language is used, seems to be to vest in the trustee the title to the entire estate of the bankrupt; and no distinction can be perceived which justifies the inference that under the last act the trustee takes the property of the bankrupt as an innocent purchaser, without notice, and that in the former he did not.'

"The cases under the act of 1867 seemed all to agree that no title would pass to the trustee superior to that of the bankrupt in a similar case, where the title to property under a conditional sale is governed by similar statutes."

The reasoning of the court in the case from which the foregoing paragraphs are taken and that in the cases cited in the opinion of the court sustains the contention that in the act of 1898 there was no purpose to extend the powers of the trustee beyond those given to the assignee under the act of 1867, but, on the contrary, an intention to give the trustee only such title to the property defined in section 70a of the new act as the bankrupt had. But do these decisions sustain the contention that the provisions of section 67a, 30 Stat. 564 [U. S. Comp. St. 1901, p. 3449], have no application to the case at bar, no bearing upon the question at issue?

In the opinion of the referee the provisions of this section (67a) present the vital questions in this case. They do not appear, nor is there anything similar to them, in words or substance, in the act of 1867, or in any previous bankruptcy act. They are found for the first time in the act of 1898. What is their meaning? What their effect? What did the framers of the statute intend when by the section they provided that "claims which for want of record or for other reasons would not have been valid liens as against the claims of creditors of the bankrupt shall not be liens against his estate"? The claim under a deed of trust which has not been recorded is invalid against certain creditors of the grantor; section 2465 of the Code of Virginia of 1887 providing that every "deed of trust, or mortgage, conveying real estate or goods and

chattels, shall be void as to subsequent purchasers for valuable consideration without notice, and creditors, until and except from the time that it is duly admitted to record in the county or corporation wherein the property embraced in such * * * deed may be," and the courts having construed the word "creditors" as used in this statute and in like statutes of other states as meaning not creditors at large, but only such creditors as have valid liens by judgment or otherwise giving them the right to charge the debtor's property specifically. See McCandlish v. Keen, 13 Grat. 615, and Dulaney v. Willis, 95 Va. 606, 29 S. E. 324, 64 Am. St. Rep. 815. See, also, In re Pekin Plow Company, supra, in which District Judge Adams, delivering the opinion of the court, and referring to the statute of Nebraska, quoted the language of the court in Bank v. Anthony, 39 Neb. 343, 57 N. W. 1029, wherein it was said that "the term 'creditor' in this statute means a judgment, execution, or attachment creditor; that is, a creditor who is using the courts of law and their processes for the collection of his debt."

If an unrecorded deed of trust is invalid against some of the debtor's creditors, its lien is invalid "as against the claims of creditors." We are not called upon to give the word "creditors," as used in section 67a, a meaning different from that which it has been in several jurisdictions judicially held to have, but, on the contrary, may safely adopt the view of the Circuit Court of Appeals of the Eighth Circuit, when, speaking through District Judge Adams in In re Pekin Plow Company, supra, having quoted the language of the section, it says:

"This language is direct, clear, and free from all ambiguity, and seems to have been chosen by the lawmakers with special reference to statutes relating to fraudulent conveyances, like that of Nebraska. It means that any liens which would not have been invalid if other creditors had a right, before bankruptcy, to avoid the same, either for want of record or otherwise, shall not constitute a lien against the estate in bankruptcy. This section fully comprehends the claim of the petitioner, and prevents the assertion of any lien by it against the bankrupt's estate."

But, contends the counsel for this creditor, section 67d, which provides that "liens given or accepted in good faith and not in contemplation of or in fraud upon this act, and for a present consideration, which have been recorded according to law, if record thereof was necessary to impart notice, shall not be affected by this act," was inserted in the act of 1898 "to safeguard the validity of liens in states where record was not necessary, or only necessary as against lien creditors, as is the case in Virginia."

Assume, as appears to be true, that the deed of trust under consideration was given and accepted in good faith for a present consideration, and was not executed in contemplation of or in fraud upon the bankruptcy act. Is the lien thereby created one of those not affected by the provisions of the bankruptcy act? The writing was not admitted to record until after the adjudication, and the recordation thereof was necessary to impart notice to a certain class of creditors and to a certain class of purchasers. Subdivision "a" of section 67, which provides that "claims which for want of record or otherwise would not have been valid as against creditors of the bankrupt shall not be liens against his estate," must be read in connection with subdivision "d" of the same section, referred to by counsel for the John L. Roper Lumber Company. By the two subdivisions of the section the intention of the lawmakers manifestly was to allow no lien which requires recordation to give it validity against any class of creditors or purchasers to stand unaffected and good against the estate of the bankrupt. Their purpose clearly was to invalidate all such liens, and to this extent to affect and rid of incumbrances the property passing to the trustee. Unless we so construe these two subdivisions of section 67, they are meaningless, as the construction of section 70a which vests the trustee in bankruptcy with only the title of the bankrupt in his property would, without the help of subdivision "d" of section 67, protect all liens not created in contemplation of or in fraud upon the bankruptcy act. Let us illustrate: If Thorp's equity of redemption in the property conveyed by his deed of trust alone passed to the trustee in bankruptcy—and this seems clear—the deed stands unaffected by the adjudication, unless affected by some provision of the act other than 70a, and therefore no provision such as subdivision "d"

of section 67 is necessary to protect or safeguard it. It cannot be true that the provisions of subdivision "d" of section 67 were inserted for the purpose of protecting or safeguarding any lien which no provision of the act impairs, as this would have been needless legislation. We must rather infer that they were made a part of the statute for a purpose, and that this purpose was that, whilst protecting all liens duly recorded, and not contravening any provision of the bankruptcy act, they should be read along with subdivision "a" of the same section, and operate to invalidate any lien which, under any statute of any state whose laws govern the transaction, would, for want of recordation, be invalid against any class of creditors or purchasers. Section 70a gives to the trustee only the rights of the bankrupt, but subdivisions "a" and "d" of section 67 invalidate an unrecorded lien, and thus practically place the trustee in the position of an innocent purchaser for value, without notice, as held in the cases cited by the counsel for the trustee in bankruptcy.

The foregoing views are believed to be in accord with the well-settled principles governing the construction of statutes. "That construction is favored which gives effect to every clause and every part of the statute, thus producing a consistent and harmonious whole. A construction which would leave without effect any part of the language used should be rejected if an interpretation can be found which will give it effect." See Am. and Eng. Encyclopædia of Law, vol. 23, p. 309, and the notes citing as authority Sedgwick's Stat. Law, 199, and numerous decisions; among them Gates v. Salmon, 35 Cal. 576, 95 Am. Dec. 139, in which Rhodes, J., delivering the opinion of the court, said that "a statute must be so construed as to give effect, if possible, to every portion of it, and without rejecting any part as surplusage, or treating it as a repetition of a provision already made"; and Montclair v. Ramsdell, 107 U. S. 147, 2 Sup. Ct. 391, 27 L. Ed. 431, in which Mr. Justice Harlan, delivering the opinion of the court, said that "it is the duty of the court to give effect, if possible, to every clause and word of a statute, avoiding, if it may be, any construction which implies that the Legislature was ignorant of the meaning of the language it employed." To treat section 67a as having no bearing upon section 70a and upon the validity of the deed of trust under consideration, and section 67d as merely safeguarding the validity of liens in certain jurisdictions, would be to disregard the well-settled rules of contruction laid down in the foregoing authorities. For these reasons the referee sustains the trustee's objection to the allowance of any part of the claim of the John L. Roper Lumber Company as a secured debt.

This ruling makes it unnecessary to pass upon other questions raised by the trustee in bankruptcy or in the able arguments, oral and written, of the counsel for the John L. Roper Lumber Company, and the counsel for the said trustee.

Bartlett Roper, Jr., for trustee in bankruptcy.

S. S. Lambeth, Jr., and Richard B. Davis, for John L. Roper Lumber Co.

WADDILL, District Judge. The ruling of the referee as set forth in the foregoing report is approved, and his opinion is adopted as that of the court. Let decree be entered accordingly.