In re LUKENS.

(District Court, E. D. Pennsylvania.    June 2, 1905.)

No. 1,741.

1. BANKRUPTCY—STATUTES—CONSTRUCTION—TITLE OF TRUSTEE.
   Bankr. Act July 1, 1898, c. 541, § 67a, 30 Stat. 564 [U. S. Comp. St. 1901, p. 3449], providing that claims which, for want of record or for other reasons, would not have been valid liens as against the claims of creditors of the bankrupt, shall not be liens against his estate, states an exception to the rule that a bankrupt's trustee takes no better title than the bankrupt possessed, and this because it forbids the holder of an instrument who might have had a lien if he had recorded it before bankruptcy to acquire such a lien by recording it thereafter.

2. SAME—MORTGAGES.
   Under the Pennsylvania law declaring that a mortgage on real estate creates a mere lien to secure the debt, and does not convey an estate in the land remaining in the mortgagor, where the mortgagee failed to record his mortgage, given for the purchase price of real estate, until after the mortgagor became bankrupt, he was not entitled to payment in full from the proceeds of the mortgaged property as against general creditors.

In Bankruptcy.   Certificate of referee.

Edward H. Hall, for trustee.

J. F. E. Hause, for mortgagee.

J. B. McPHERSON, District Judge.   The undisputed facts in this case are as follows:   Nathan Lukens, the bankrupt, took title to a house and lot of ground on April 4, 1901, and his deed was recorded on that day.   He borrowed $800 of the purchase money from Hannum Baldwin, and gave a mortgage therefor, but the mortgage was not recorded for more than two years.   On September 29, 1903, Lukens was adjudged a voluntary bankrupt, and on October 16th a trustee was duly elected and qualified.   On October 22d the mortgage was recorded.   In March, 1904, Baldwin received a dividend of $266.86 out of the proceeds of personal property belonging to the bankrupt, the dividend having been declared on the bond accompanying the mortgage.   In August following, the referee ordered the house and lot to.be sold free of liens and incumbrances, and the trustee sold it in September for $925.   Baldwin claimed to be paid the balance of his mortgage in full, and the referee sustained the claim, relying upon Mellon's Appeal, 32 Pa. 121, Britton's Appeal, 45 Pa. 177, Tryon v. Munson, 77 Pa. 250, and McLaughlin v. Ihmsen, 85 Pa. 364.   The reasons for his decision are thus given in the report:

"The foregoing authorities clearly indicate the nature and effect of a mortgage, whether recorded or not, and that it is not merely a security for a debt, but a conveyance of the mortgagor's title and estate in the land covered by the mortgage.   They show further that, though unrecorded, a mortgage is perfectly good and lawful, not only against the mortgagor himself, but also against all others except bona fide purchasers for value and lien creditors without notice.   The act of assembly of May 19, 1893 (P. L. 108), seems to have contained an attempt to change the law, as it had been, so as to let in general creditors of the grantor or bargainor.   But the Supreme Court in Davey v. Ruffell, 162 Pa. 443, 29 Atl. 894, held that this attempt was abor-

tive, and that the act is to be read as though the word 'creditors' was not in it.

"At the time Mr. Lukens was adjudged bankrupt, the estate he had in the mortgaged premises was his equity of redemption, and nothing more; and that was the whole and only estate therein that was cast upon the trustee in bankruptcy, or which he had power to sell under the order of the referee. It is true that the order directed him to sell the property freed and discharged from the liens and incumbrances thereon, but that was for the convenience of bidders, and did not affect the rights of the mortgagee in any way.

"I am aware that in a recent case in bankruptcy, Re John A. Thorp (D. C.) 12 Am. Bankr. Rep. 195, 130 Fed. 371, it was held that section 70a gives to the trustee only the rights of the bankrupt, but that subdivisions "a" and "d" of section 67 invalidate an unrecorded lien, and thus practically place the trustee in the position of an innocent purchaser for value without notice. If this case is to be understood as giving to the trustee a higher or greater title and estate in the mortgaged premises than the bankrupt himself had at the time he was adjudged bankrupt, then I must respectfully decline to follow it. It is inconceivable that the trustee can be vested with any higher or greater title and estate than the bankrupt held at the time of adjudication. The true interpretation of the bankrupt law in this respect, as I view it, is to be found in Re Kellogg (D. C.) 7 Am. Bankr. Rep. 270, 112 Fed. 52, and cases therein referred to.

"After careful consideration of the whole question, I am of opinion that the claim made on behalf of the mortgagee should be allowed; that he is legally and equitably entitled to priority, and to be paid in full out of the proceeds of sale of the mortgaged premises."

It is undoubtedly true that two apparently conflicting lines of decision by the Supreme Court of Pennsylvania concerning the nature and effect of a mortgage may be found without difficulty, one line being represented by the cases that are cited in the referee's report, which speaks of a mortgage as being "an interest or estate in the land itself, capable of enjoyment, and enabling the mortgagee to grasp and hold it actually, and not a mere lien or potentiality to follow it by legal process and condemn it for payment. The land" (it is further said) "passes to the mortgagee by the act of the party himself, and needs no legal remedy to enforce the right. But a lien vests no estate, and is a mere incident of the debt, to be enforced by a remedy at law, which may be limited." Tryon v. Munson, supra. The other line of cases regards a mortgage as essentially a security for the payment of money, passing no estate that can be taken for a debt of the mortgagee, but conferring a lien merely, although it is a lien that may be enforced (among other remedies) by an action of ejectment, under which the mortgagee may obtain possession of the land and may apply the net profits to the payment of the mortgage debt. Thus, in Rickert v. Madeira, 1 Rawle, 328, Mr. Justice Rogers, delivering the opinion of the court, said, inter alia:

"That a mortgage is but a chose in action, a mere evidence of debt, is apparent from the whole current of decisions. A devise of a man's personal estate carries with it all his mortgages. A mortgage may be released by an instrument not under seal, and an assignment of the bond, which usually accompanies the mortgage, transfers the right to the mortgage itself; for whatever will give the money secured by the mortgage will carry the mortgaged premises along with it. The forgiving the debt, although by parol, will draw the land after it as a consequence. The whole result of the cases is that a mortgage, although in form a conveyance of land, is in substance but a security for the payment of money; and the debt being paid, or in any manner extinguished, the mortgagee becomes a trustee for the mortgagor."

In Presbyterian Corporation v. Wallace, 3 Rawle, 109, where the subject is elaborately considered by Chief Justice Gibson, it is said, on star page 128:

"In form, a mortgage is certainly a conveyance; but it is unquestionably treated at law here, in the way it is treated in equity elsewhere, as a bare incumbrance, and the accessory of a debt. As between the parties it is a conveyance, so far as is necessary to enforce it as a security. As regards third persons, the mortgagor is the owner, even of the legal estate. This distinction, which, if attended to, will be found to reconcile the apparently jarring dicta of the judges, is as firmly established by the practice and decisions of the courts in Pennsylvania as any other in the law. If the mortgagee had the title for any other purpose than to afford him a remedy, it would not be easy to account for the absence of all the incidents of his supposed ownership; yet his estate, if such it be, certainly cannot be set up as outstanding to bar an ejectment by the mortgagor, or an action of trespass, or a proceeding to obtain compensation for a privilege under a statutory license; nor is it subject to taxation, or lien by judgment, or sale on execution, or survivorship by reason of joint tenure, or courtesy or dower. It does not break the descent of the estate, or require a reconveyance to vest the title, or prevent it from vesting in a purchaser, or affect the validity of a second mortgage."

Craft v. Webster, 4 Rawle, 242, is. to the same effect. On star page 252, Mr. Justice Kennedy uses this language:·

"The mortgage is merely a lien upon his land, as a security for the payment of the money or fulfillment of some engagement therein mentioned. The mortgagee has no subsisting interest in the land which he can convey, either absolutely, conditionally, or qualifiedly, or even mortgage to a third person. The mortgage is purely an incident to the debt, as completely so as the bond is to the .debt that it has been given to secure the payment of, and its existence cannot possibly be imagined without the debt."

And he added on page 255:

"A mortgage in Pennsylvania is literally and legally now understood to be but a bare security for the payment of the money or performance of other acts therein mentioned, and, at most, only a chose in action."

Asay v. Hoover, 5 Pa. 21, 45 Am. Dec. 713, cites Rickert v. Madeira with approval, and goes on to say:

"Emphatically, in this state, a mortgage, like a judgment, confers upon the mortgagee nothing more than a lien upon the land, which may be defeated by payment of the money loaned at any time before sale made by the sheriff, in pursuance of our acts of assembly giving a remedy to the creditor."

Wilson v. Shoenberger's Executors, 31 Pa. 295, declares it to be—

"The settled law of the Pennsylvania mortgage that, though in form a conveyance of title, it is in reality, both at law and equity, only a security for the payment of money or performance of other collateral contract. And none the less so because the defeasance, instead of appearing in the original deed, is contained in an accompanying or subsequently executed instrument."

In Lennig's Estate, 52 Pa. 135, Mr. Justice Agnew, who wrote the subsequent opinion in Tryon v. Munson, declares, without qualification, that

"A mortgage is but a security for a debt, the estate in the land remaining in the mortgagor, and the mortgagee having no estate whatever, except the mere legal title as the means of enforcing payment."

And, not to incumber this opinion with further citations, in the recent case of McIntyre v. Velte, 153 Pa. 350, 25 Atl. 739, Wilson v.

Shoenberger's Executors was approved in a brief opinion, wherein the court also said:

"A mortgage is but a security for the payment of money, with the right of lien upon the mortgaged premises to enforce payment. It is not stamped with the character of real estate, but is a bare incumbrance or charge."

Many other cases are referred to in 12 Pepper & Lewis' Dig. Dec. 20, 415b et seq., where the whole subject is satisfactorily digested. It may perhaps be safely concluded that a mortgage in Pennsylvania is held to be either an estate or a lien, as the equities of the particular case may require, but that the general rule holds it to be a lien only, and not an estate.

The cases upon which the referee relies decide that an unrecorded mortgage is good against the mortgagor, or against subsequent purchasers and lien creditors with notice; and this decision is not to be controverted. Neither do I question the further proposition that, speaking generally (for there are certainly some exceptions to be noted), a trustee in bankruptcy takes no better title to the bankrupt's property than the bankrupt himself possessed. But I am unable to take the further step and decide that, because a mortgage in Pennsylvania conveys for certain purposes a formal title or estate in the land, a bankrupt mortgagor has nothing left but an equity of redemption, and therefore his trustee can take nothing more. On the contrary, I am of opinion that the general rule in Pennsylvania is that a mortgage, recorded or unrecorded, is a mere security for money, and gives a lien, but not an estate in the ordinary sense of the word. It follows, I think, that the plain, unambiguous language of section 67a of the bankrupt act (Act July 1, 1898, c. 541, 30 Stat. 564 [U. S. Comp. St. 1901, p. 3449]) states an exception to the rule that the trustee takes no better title than the bankrupt himself possessed, and it states such an exception because it forbids the holder of an instrument, who might have had a lien if he had recorded it before the bankruptcy, to acquire such a lien by recording it afterwards. This necessarily gives the trustee a better title than the bankrupt possessed, but it was competent for Congress to provide that such a result should follow a failure to record, and, as I think, the act has so provided. It is argued that the federal decisions are conflicting concerning the effect of section 67a and section 70 (30 Stat. 564, 565 [U. S. Comp. St. 1901, pp. 3449, 3451]), considered together. The principal cases are referred to in Re Thorp (D. C.) 12 Am. Bankr. Rep. 195, 130 Fed. 371, and Re Kellogg (D. C.) 7 Am. Bankr. Rep. 270, 112 Fed. 52. So far as they may not be in harmony, the better reason seems to me to lie with the courts that are disposed to give its plain ordinary meaning to the language of section 67a. I do not see why a delinquent mortgage creditor who has slept upon his rights should be regarded with favor, and should have the benefit of any subtlety of construction. It seems to me that Congress intended to say, inter alia, to such creditors:

"If from lack of diligence you have failed to record your mortgage before the beginning of bankruptcy proceedings, you shall not acquire a lien afterwards, although you do record it then. Indeed, even if you have acquired

a lien, it may be avoided under certain conditions; but, in any event, you must have a formal, completed lien when the suit is begun, or you shall never acquire it."

The creditors of the bankrupt, whether they have liens or have none, are entitled in fairness to know what the bankrupt's financial standing is, and a creditor who fails to record his mortgage, and thereby gives to the mortgagor a fictitious credit, pro tanto, has no reason to complain—at least so far as subsequent creditors are concerned—because the statute forbids him to come in afterwards and claim for himself the very property of which he has allowed the bankrupt to appear as the absolute owner.

Re Garcewich, 115 Fed. 87, 53 C. C. A. 510, is not opposed to the conclusion to which I have come, as will appear from the following sentence in the opinion of the court:

"Under the present bankrupt act, as under previous bankrupt acts, the trustee takes the property of the bankrupt, in cases unaffected by fraud, in the same plight and condition that the bankrupt himself held it, and subject to all the equities impressed upon it in the hands of the bankrupt, except in cases where there has been a conveyance or incumbrance of the property which is void as against the trustee by some positive provision of the act."

In the present case, as I think, there is an incumbrance of the property which is void as against the trustee by the positive provision of section 67a. See, also, Chesapeake Shoe Co. v. Seldner, 122 Fed. 593, 58 C. C. A. 261.

The decision of the referee is reversed, and he is instructed to distribute the fund in accordance with this opinion.