### In re ARONSON.

(District Court, D. Massachusetts. August 6, 1917.)

No. 24446.

1. BANKRUPTCY ⚙116—RECLAMATION PETITIONS—HEARING.

Where the referee's certificate separated and distinguished the claims of several creditors, each of whom petitioned to reclaim goods in the possession of the receiver in bankruptcy, on the ground that they did not belong to the bankrupt, the fact that the referee heard the reclamation petitions together was not an abuse of discretion.

2. BANKRUPTCY ⚙140(2)—CONDITIONAL SALE—PASSAGE OF TITLE.

Whether an arrangement whereby possession of goods was transferred from one to another is a conditional sale, a consignment, or a sale on credit, depends less on how it is described by the parties than on the rights and liabilities created by it, and where the seller delivered goods to the buyer, authorizing the buyer to dispose of them and retain the

purchase price, the fact that the transaction was denominated a consignment, or a conditional sale, does not prevent title passing; ownership being acquired, and the provisions that title should not pass being fraudulent as to the buyer's creditors.

3. BANKRUPTCY ☞140(1)—EVIDENCE—PASSAGE OF TITLE.

On petition of creditors of a bankrupt to reclaim goods, on the theory that title had not passed, evidence *held* to show that the sales were sales on credit, and title passed.

4. BANKRUPTCY ☞116—PROCEEDINGS—PERJURY—INFERENCES.

Where a petition for reclamation of goods delivered by petitioner to a bankrupt was of a suspicious character, and supported by testimony which the referee might rightly believe to be perjured, it is proper to draw every adverse inference from the evidence, and resolve all reasonable doubts against the petitioner.

5. BANKRUPTCY ☞140(2)—RECLAMATION PETITIONS—FRAUD ON CREDITORS.

An agreement between a seller and buyer of goods that title should not pass is unavailing, being fraudulent as to creditors, where not intended to be acted on unless the buyer should get into financial difficulties.

In Bankruptcy. In the matter of Casper A. Aronson. Petitions by the Boston Traveling Goods Company and others to reclaim from the receiver goods which petitioners contended were their own property. The referee denied the petitions, and petitioners appeal. Order affirmed.

Samuel J. Freedman, of Boston, Mass., for trustee.

Jacobs & Jacobs, of Boston, Mass., for Boston Traveling Goods Co.

Louis Rosenthal, of Boston, Mass., for Hugo Murrell.

Clarence F. Eldredge and Edward E. Ginsburg, both of Boston, Mass., for Isaac A. Simon.

Barnett White, of Boston, Mass., for Maurice Feinzig and others.

MORTON, District Judge. [1] These are three petitions brought by independent petitioners to reclaim from a receiver in bankruptcy certain goods which the several petitioners contend were their property. The learned referee heard all the petitions together. His course in so doing was objected to by the petitioner Simon; but it seems to me to have been right, and certainly it was within the referee's discretion. In the certificate the different claims are carefully separated and distinguished, and Simon's rights were in no way prejudiced by what was done. This action of the referee is affirmed.

[2] Aronson, the bankrupt, conducted a retail shop in Boston for the sale of trunks, bags, and other leather goods. All the goods here in question went into the active stock in the shop, were used for display purposes, and were sold when the opportunity arose. The proceeds from the sales were treated exactly like the proceeds from sales of goods owned by the bankrupt. All these facts were known to and approved by each of the claimants. The arrangements between the several claimants and the bankrupt—whatever the details may have been—clearly gave him the right to deal with the goods as above stated. If it was also understood that the bankrupt was to buy the goods from the vendors, it would seem that, as a matter of law, he acquired absolute title to them.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Whether an arrangement is a consignment, a conditional sale, or a sale on credit depends less on how it is described by the parties than on the rights and liabilities created by it. It is difficult to generalize, so as to cover all possible cases; but it seems clear that, where the person to whom the goods are delivered becomes obligated to buy them at a certain price, and at some time to pay for them, and also has the right to sell the goods without keeping the proceeds of such sales separate, and with the right to use such proceeds as he sees fit, there is no retention of title in the vendor, as against creditors of the buyer. To have agreed to buy goods, to take possession of them, to have the right to sell them at such price as one may fix, and the right to use the proceeds as one pleases is to own the goods. Ownership is acquired upon delivery of goods under such an understanding, and it is not negatived by an agreement that, until they shall be sold by the vendee, the title to them shall remain in the vendor. Such an agreement is inconsistent with the arrangement as a whole. It is a misuse of language to say that the title is retained; the facts show that it is not.

"Contracts of sale, under which title is to remain in the vendor, although the vendee may consume the goods, or sell them and apply the proceeds to his own use, are fraudulent as to creditors, because the stipulation that the title is to remain in the vendor is entirely inconsistent with the purpose of the contract." Ludvigh v. American Woolen Co., 188 Fed. 30, 33, 110 C. C. A. 180, 183; Id., 231 U. S. 522, 34 Sup. Ct. 161, 58 L. Ed. 345.

It was in dispute whether the bankrupt agreed to buy the goods here claimed. Each of the claimants or its representative testified in substance that the goods were merely consigned to him; that he never had any title to them, and never became obligated to buy them. In no case was there a written contract of consignment or conditional sale between the bankrupt and the claimant. The evidence relied on by the claimants consists, speaking generally, of bills of parcels accompanying delivery of the goods, and of alleged conversations with the bankrupt. On the other side, there was the testimony of two clerks, employed by the bankrupt, who are now preferred creditors of the estate, which was, to say the least, inconsistent with the testimony of the bankrupt and each claimant. The foregoing statement applies to all the petitions.

[3-5] As to the Simon petition: All the goods claimed in this petition were covered by bills or delivery sheets reciting that they were "sold to Reliable Trunk & Bag Company," the name under which the bankrupt did business. There were about half a dozen such bills, running in date from October 27, 1916, to December 5, 1916. They differed as to terms. That of October 27th is net 30 days; that of November 10th has no terms stated; another of November 10th has terms "Regular"; that of November 28th has terms "Cash"; that of November 29th has terms "Cash"; that of December 1st has terms "Memo. Cons." (meaning memorandum consignment); that of December 5th has terms "Cash." The claimant makes no distinction between the arrangements evidenced by these various bills, after the one of "about November 1st" (which I take to be the bill of October 27th above referred to). No goods in this bill are now claimed.

245 F.—14

All the goods covered by the bill of December 5th, in which the terms were stated as "Cash," were paid for by the bankrupt four days later with a 2 per cent. discount; and some of these are among those retaken by the claimant as his property, and to which title is now asserted by him. The same is true as to the bill of November 28th, and certain items therein specified. The contention that these goods, which have been bought and paid for by the bankrupt, are the property of the claimant, is obviously untenable. They were never sold by the bankrupt, but they were paid for by him—a significant circumstance in determining what his arrangement with the claimant was. Various facts, as to which there can be no doubt, are absolutely inconsistent · with the claimant's testimony that the goods were merely consigned to the bankrupt, not to be paid for till sold by him, and with no obligation on his part to buy them.

It is apparent, as the referee finds, that "the evidence of both Simon and the bankrupt [is] of very little value in the matter of what the arrangement between them was." Against a claim of such an obviously suspicious character, supported by testimony which he might rightly believe to be perjured, the learned referee was quite warranted in drawing every adverse inference which the facts and evidence fairly suggested, and in resolving all reasonable doubts against the party resorting to such methods.

I have no doubt that the goods were in fact sold to the bankrupt as the bills state, that he agreed to buy them and to pay for them at the prices stated, that he had the right to sell them at such prices as he might put upon them, and to use the proceeds of such sales as he saw fit. What the nominal understanding as to payment was between Simon and the bankrupt seems to me, as it did to the learned referee, to be unimportant. It was not, in my opinion, intended to be acted on, unless the bankrupt got into financial difficulties, and was therefore fraudulent as to creditors. Flanders Motor Car Company v. Reed, 220 Fed. 642, 136 C. C. A. 250 (C. C. A. 1st Cir.). The findings of the learned referee on this petition are affirmed.

As to the petitions of the Boston Traveling Goods Company and the Murrell Leather Goods Company:

As above stated, the claimant in each of these petitions contended that the goods sought to be recovered had been merely consigned to the bankrupt, without obligation on his part to purchase them. Whether this was the fact was sharply disputed, and the evidence was conflicting. The learned referee disbelieved the testimony for each claimant, and found that all the goods had been sold, not consigned. His certificate sufficiently states the nature of the controversy, and the evidence on which he acted. I agree with his findings and conclusion.

The orders appealed from, dismissing the petitions, are affirmed.