### In re RENFRO–WADENSTEIN et al.
### No. 9085.

District Court, W. D. Washington, N. D. Feb. 5, 1931.

242

Poe, Falknor, Falknor &·Emory, of Seattle, Wash., for petitioners.

Eggerman & Rosling, of Seattle, Wash., for trustee.

NETERER, District Judge (after stating the facts as above).

The legal issue involved is: Was the merchandise, cash, or accounts in bankrupt's possession after adjudication held as on consignment as to either or both petitioners?

The state insolvency laws are not controlling, in view of subdivision (15), § 1, Bankruptcy Act (11 USCA § 1(15):

"A person shall be deemed insolvent within the provisions of this title whenever the aggregate of his property, exclusive of any property which he may have conveyed, transferred, concealed, or removed, or permitted to be concealed or removed, with intent to defraud, hinder, or delay his creditors, shall not, at a fair valuation, be sufficient in amount to pay his debts."

No actual fraud is shown within the state insolvency laws.

The trustee is vested by operation of law with the title of the bankrupt and the rights of its execution creditors. Section 70, Bankruptcy Act (11 USCA § 110). In re Thorp (D. C.) 130 F. 371. And such rights are determined by the local law. Hewit v. Berlin Mach. Works, 194 U. S. 296, 24 S. Ct. 690, 48 L. Ed. 986.

"No bill of sale for the transfer of personal property shall be valid, as against existing creditors or innocent purchasers, where the property is left in the possession of the vendor, unless the said bill of sale be recorded in the auditor's office of the county in which the property is situated, *within ten days after such sale shall be made.*" (Italics supplied.) Section 5827, Rem. Comp. Stat. of Washington.

A delivered, unrecorded bill of sale is ineffectual as against creditors under section

5827, supra. Schloss v. Stringer, 113 Wash. 529, 194 P. 577. And a bill of sale, to be effectual as against creditors, must be filed within ten days after the sale is made. Section 5827, supra. "It does not say within 10 days after the bill of sale is delivered." Schloss v. Stringer, supra, at 532 of 113 Wash., 194 P. 577, 579.

The so-called "consignment agreement" (Petitioners' Exhibit No. 1) was signed by the bankrupts on March 23, 1928, and delivered to Ketcham & Rothschild, who signed it in Chicago, March 30, and the Irwin Company agreement mailed to the Irwin Company, received March 27, or 28, signed and dated by them April 1, but retained until September 5, when one copy was sent to the bankrupt.

Paragraph 9 of this agreement provides:

"* * * It is hereby agreed that the title to such goods, and the same is, *hereby transferred and conveyed* to said party of the first part (petitioners), and that from and after this date the same shall be delivered as *having been delivered* to said parties of the second part on consignment and under and subject to all of the terms and conditions of this contract. In consideration of the transfer and conveyance of the title to said goods back to the said party of the first part, that company does hereby cancel the indebtedness of the said party of the second part" (bankrupt).

█ The sale or transfer was made on the 23d of March and delivered to and executed by the petitioners March 30 and April 1st, respectively. The bill of sale made on August 6, 1928, to Irwin & Company is but evidence of the sale made on the 23d of March, and the bill of sale, not having been filed for record, cannot in any event have validity as against creditors, and, by the same token, the bill of sale executed by the bankrupts on the 16th day of April, 1928, and filed for record April 24 following, is evidence only of the transfer made in March, supra, and the filing on the 24th of April is ineffective. The fact that an inventory was furnished at a later date is immaterial, since the contract was complete as to the essentials, and the formalities after inventory are immaterial. Grainger & Co. v. Louisville Cornice, Roofing & Heating Co., 132 Ky. 563, 116 S. W. 753; Sellers v. Greer, 172 Ill. 549, 50 N. E. 246, 40 L. R. A. 589; McPherson v. Fargo, 10 S. D. 611, 74 N. W. 1057, 66 Am. St. Rep. 723; Harlan v. Logansport, 133 Ind. 323, 32 N. E. 930; Johnston v. Trippe (C. C. A.) 33 F. 530.

█ That the contract was completed is emphasized by the invoices from Ketcham & Rothschild dated April 2 and 7, 1928, which show a combined shipment of over $8,000. See Phillips v. Moor, 71 Me. 78; Hosner v. McDonnell, 114 Wash. 489, 195 P. 231. After the execution of the agreement the relation of the parties and merchandise was established, and neither had the right to change or give to the agreement its own interpretation. Mooney v. Daily News Co., 116 Minn. 212, 133 N. W. 573, 37 L. R. A. (N. S.) 183; Sturtevant Co. v. Cumberland, D. & Co., 106 Md. 587, 68 A. 351, 14 Ann. Cas. 675; Newhall Land & Farming Co. v. Hogue-Kellogg Co., 56 Cal. App. 90, 204 P. 562.

As to the merchandise sold on open account and retransfer attempted, the proof does not show resale.

Is the agreement one of sale or consignment?

As tending to show consignment, bankrupt agreed to insure the merchandise in the name of the manufacturer and sell it at not less than invoiced price, retain commissions on sales above invoiced price, keep itemized records of sales distinct from other sales, and make report as stated times of the consigned goods, giving the selling price, names and addresses of purchasers; if any goods were recalled, bankrupt agreed to crate and place on cars at Seattle.

On the sale side, the merchandise was shipped f. o. b. factory, invoiced to the bankrupt, and charged provisionally to the consigned account, the bankrupt to pay all freight and carrying charges, insurance premium, and expense of caring for the goods pending sale; if collection is not made, bankrupt to execute a demand note, collateralized by the assignment of account equal to the amount due, and guarantee the credit of customers, and pay "carrying charge" equal to 7 per cent. after 90 days of shipment date for unsold merchandise; on termination of contract agreed to buy and keep merchandise at the option of manufacturer and pay 25 per cent. every 30 days until paid. It is provided the consigned goods or the accounts to be the property of the shipper or manufacturer.

█ A bailment is differentiated from a sale, in that it contemplates no transfer of ownership. Sturm v. Boker, 150 U. S. 312, 14 S. Ct. 99, 37 L. Ed. 1093. An agreed price, a vendor, a vendee, an agreement to sell for the agreed price, and agreement of vendee to buy for and pay the agreed price are essential elements of a contract of sale.

These elements are not in the agreement. The power to repossess the specific merchandise is an incident of bailment. In re Columbus Buggy Co. (C. C. A.) 143 F. 859. This right is in the contract. The mere fact that the contract provides that the bankrupt may fix the selling price at not less than invoice and to keep commissions, covering insurance, storage, and expenses of keeping, does not constitute sale if there is no obligation of the bankrupt to buy. In re Columbus Buggy Co., supra; Franklin v. Stoughton Wagon Co. (C. C. A.) 168 F. 857; Ludvigh v. Am. Woolen Co., 231 U. S. 522, 34 S. Ct. 161, 58 L. Ed. 345; see, also, In re Eichengreen (D. C.) 18 F.(2d) 101. Nor does the agreement of the bankrupt to guarantee the accounts of purchasers change the relation of consignment to sale. Ludvigh v. Am. Woolen Co., supra. The agreement of the bankrupt to buy the merchandise at the option of the manufacturer at the termination of the contract does not create a sale, as the parties may make a valid consignment agreement making provision for change, and until the change is effected, the agreement is one of consignment. Mitchell Wagon Co. v. Poole (C. C. A.) 235 F. 817. I have no doubt that the intent of the parties was in good faith to ship future merchandise on consignment, no present liability by the bankrupt was made, or right created to petitioner. In re Aronson (D. C.) 245 F. 207. The relation was principal and factor, with the rights of each defined, rather than debtor and creditor. The superadded agreement as to purchase was a condition which had not matured. The petitioners, as the testimony discloses, had confidence in the bankrupts and "felt justified in backing them with merchandise to the extent of their new enterprise." There was no basis for credit, but did have a basis for payment. The contingency not having matured into a fixed status, the merchandise shipped on consignment and delivered to the trustee, should be accounted for by him.

### As to Accounts and Cash.

There is no evidence to show that the money held by the trustee was received for sale of merchandise held on consignment. The money claimed must be traced to the trust fund. See In re John Deere Plow Co. (C. C. A.) 137 F. 802. There is no evidence that the money in issue was received for the consigned merchandise, and upon report of sale the merchandise was billed to bankrupt as on sale; and to recover, petitioner must prove his merchandise or money received for it, or trace the merchandise to the account. This has not been done. Zenor v. McFarlin (In re Lockwood Grain Co.) 238 F. 721, 725 (C. C. A.).

The inevitable conclusion is that the merchandise of petitioners' manufacture in bankrupt's possession on April 1, 1928, vested in the bankrupt, and that the attempted retransfer to the petitioners was ineffective; that the merchandise shipped subsequent to this date was held on consignment; and that the petitioners are entitled to the proceeds of the sale of such consigned merchandise as passed to the trustee in bankruptcy. No trust relation has been traced to accounts which came into the possession of the trustee in bankruptcy, or merchandise sold under consignment. These funds were so commingled with the general funds of the bankrupt that no identity is established.

It would unduly extend this memorandum to apply or distinguish the numerous cases cited by both parties and no good purpose would be served.

The order of the referee is affirmed, except as herein stated.